Argued January 19, reversed and remanded March 9, 1972

## STATE OF OREGON, *Appellant, v.*
## GRANT JEROME KANGISER, *Respondent.*

494 P2d 450

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Patrick D. Gilroy,* Oregon City, argued the cause for respondent. With him on the brief was William E. Schumaker, Oregon City.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

Defendant was indicted for unlawful possession of the dangerous drug amphetamine. ORS 475.100. He moved to suppress as evidence certain matter seized at the Clackamas County jail by the officers on duty at the jail including a bottle labeled "Gantrisin" and its contents. After a hearing, the trial court granted defendant's motion. The state appeals, pursuant to ORS 138.060 (4).

The relevant facts are undisputed and are as follows. About 12:40 a.m. on March 2, 1971, an Oregon City police officer arrested defendant for being drunk in public, in violation of ORS 166.160 (repealed Oregon Laws 1971, ch 743, § 432). Incident to that arrest, the officer searched defendant's person and found a plastic bottle bearing a prescription label, the contents of which were wrapped in what the officer described as "Kleenex." Without examining the contents, the officer returned the bottle to defendant and took him to the Clackamas County jail.

At the jail, defendant was again searched and his personal property taken from him in accordance with the normal booking procedure. Among defendant's property the jailers found a bottle with a label bearing a prescription number, a physician's name, the drug name "Gantrisin" and an indication that the contents were to be taken four times daily. The bottle contained a number of small, round, double-scored white pills, wrapped in a white napkin. The jailers took custody of the bottle, it being the practice of the jail to do so, and thereafter to pass out any required medication to the inmates at regular hours. They contacted the physician whose name appeared on the label. The physician did not testify at the suppression hearing, and what, if anything, he told the jailers regarding the medicine bottle is not in evidence. The jailers then attempted to identify the pills, first by referring to a physician's desk reference book, and thereafter by performing a chemical test on them. This prosecution followed.

On May 18, 1971, the Clackamas County District Court entered an order suppressing the evidence taken by the jailers. Thereafter, the Grand Jury of Clackamas County returned into the circuit court an indictment charging the defendant with the offense of illegal possession of dangerous drugs. ORS 475.100. In the circuit court, in support of this motion to suppress, the defendant contended that (1) the circuit court was bound by the ruling of the district court, and (2) in any event, the plaintiff failed to carry its burden of proof in showing that the evidence was properly seized. After hearing the testimony of the arresting officer and the two jailers involved, the trial court ruled that, while it disagreed with the district court's determination that the search and seizure was im-

proper, it had no power to rule otherwise since the question was res judicata by reason of the prior ruling of the district court.

In its sole assignment of error the plaintiff asserts that:

"The trial court erred in allowing defendant's motion to suppress evidence in this case, because the circuit court was not bound by the prior ruling of the district court suppressing said evidence in proceedings prior to the return of the indictment herein, and because the evidence was lawfully seized incident to defendant's arrest, as part of the normal jail booking procedure. * * *"

■ The majority of plaintiff's brief is devoted to its assertion that the circuit court was not bound by the prior ruling of the district court on the motion to suppress. In this contention, the plaintiff is correct. In *State v. Stahley*, 7 Or App 464, 492 P2d 295 (1971), decided after this case was argued on appeal, we stated:

"Because we do not believe that the law was intended to prevent prosecutions by the state by making a non-appealable suppression order final, we hold, absent a supporting record, that the ruling of the district court suppressing the evidence at or prior to the preliminary hearing is not binding upon the trial court." 7 Or App at 468.

Although the trial judge erroneously assumed that he was bound by the prior ruling of the district court, he did make a direct ruling on the propriety of the seizure and analysis of defendant's pills. He stated:

"* * * I could be wrong on the validity of the search but it appears to me that the officer—when an Officer does what he did here, *which was perfectly valid,* and as a result finds out there is contraband, to me that is a valid search and seizure.

It's legally obtained. * * *" (Emphasis supplied.)

■ To inventory an arrestee's personal belongings as part of the standard booking procedure is lawful. *State v. Sorgenfrei,* 93 Adv Sh 1312, 1313, 7 Or App 442, 490 P2d 1040 (1971), Sup Ct *review denied* (1972); *State v. Riner,* 6 Or App 72, 485 P2d 1234, Sup Ct *review denied* (1971); ORS 142.210. When pills or other items which appear to be for medicinal purposes are found on an arrestee's person during booking, it is particularly important that these be taken into custody. Such measures are necessary for, as one of the jailers testified, "* * * his [the arrestee's] safety and for our security on contraband taken to the jail * * *." The jailers further testified that standard procedure requires them to pass out at regular intervals any necessary medicine to the inmates. ORS 169.140 provides:

> "The keeper of each jail shall furnish and keep clean the necessary bedding and clothing for all prisoners in his custody, and *shall supply them with* wholesome food, fuel and *necessary medical aid.* * * *" (Emphasis supplied.)

Trusted with this responsibility, it is proper that jailers take all reasonable precautions to assure that medicine to be dispensed is in fact what it purports to be and that it is necessary medication. This is particularly true when the "medicine" is found on an arrestee's person during the inventorying of his belongings.

■ As indicated by recent cases, jail authorities are not entitled, without probable cause, to make a general exploratory search, seizure and analysis of all items found on an arrestee during booking. *State v. Sorgen-*

*frei,* supra; *State v. Raiford,* 7 Or App 302, 490 P2d 1036 (1971); *State v. Riner,* supra; *State v. Whitewater,* 251 Or 304, 445 P2d 594 (1968). Generally, it is necessary that the jailer have a reasonable belief or well warranted suspicion that some item found on an arrestee may be evidence of a crime before he can seize it for further investigation. In the case at bar, the evidence showed one of the jailers contacted Dr. McGraw, whose name appeared as the dispensing physician on the prescription on the bottle. Following this conversation he talked to the defendant. A physician's desk reference book was then consulted by the officer. Thereafter the pills were chemically analyzed. What the jailers learned from the doctor and the desk reference was excluded by the court. The state does not assign these rulings as error.[1]

█ Not only was this defendant in such a state of intoxication that any medicine might have been dangerous to him, but there is also evidence that one of the jailers, upon seeing the pills, doubted that they were Gantrisin. When asked why he contacted Dr. McGraw, he testified:

> "Because I had doubts that this is what it was. I didn't believe this was Gantrisin that was wrapped up in the napkin."

---

[1] The doctor's statements to the jailer were apparently excluded as hearsay, the results of the examination of the physician's desk reference book as in violation of the best evidence rule, and the conversation with the defendant as in violation of the *Miranda* rule. Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). No offers of proof were made. We do not here decide the correctness of those rulings, but call attention to the fact that the question before the court was simply the existence of probable cause or well warranted suspicion to justify the seizure and examination of the pills by the jail officials.

Thus, although the record does not directly state why the jailers then proceeded with the chemical analysis of the pills, an inference that they then had a well warranted suspicion concerning the nature of the pills as a result of their investigation is reasonable.

As pointed out above, jailers have a duty to take reasonable precautions to assure that prescription medicine to be dispensed by them to an inmate is both correctly identified and medically authorized. They are thus entitled to the presumption that official duty has been regularly performed. ORS 41.360 (15). Thus, we think that the trial court reasonably inferred that the seizure and examination of the pills was properly conducted pursuant to a duty enjoined by law upon the jailers. The court did expressly find that the seizure of the pills by the jailer "was perfectly valid."

It follows from the foregoing that the judgment must be reversed and remanded with instructions to deny the motion to suppress.

Reversed and remanded.