## COMMONWEALTH vs. FRANCIS SCALA.

Middlesex.    February 4, 1980. — April 30, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Collateral Estoppel.   Constitutional Law,* Double jeopardy, Search and
    seizure.   *Due Process of Law,* Collateral estoppel.   *Search and Sei-
    zure,* Warrant.   *Practice, Criminal,* Directed verdict, Grand jury pro-
    ceedings.

Where police officers obtained complaints against a defendant as the re-
    sult of a seizure of drugs from his apartment and, upon arresting the de-
    fendant on the complaints, they found drugs on his person resulting in
    an indictment charging unauthorized possession of the drugs with intent
    to distribute, the allowance of the defendant's motion to suppress the
    drugs seized from his apartment and subsequent acquittal on the com-
    plaints in a District Court did not preclude reconsideration of the legali-
    ty of the apartment search at the defendant's trial on the indictment or
    prosecution of the indictment since the defendant was not placed twice
    in jeopardy for the same offense and since the suppression ruling of the
    District Court judge could not have been appealed by the Common-
    wealth and was not supported by a record. [503-508]
A search warrant describing the premises to be searched as "the entire
    apartment located on the second floor" of a building encompassed a
    third floor attic which was accessible only from the second floor apart-
    ment. [508-509]
In executing a warrant for the search of an apartment and seizure of
    certain stolen furniture, the police had a right to seize as contraband
    an open bag containing numerous bottles of drugs. [511]
At the trial of a defendant charged with unauthorized possession of am-
    phetamine with intent to distribute, evidence that the defendant had
    on his person twenty packets of amphetamine with a street value of
    $280 a packet was sufficient to warrant a finding of intent to distrib-
    ute. [511]
There was no merit to a defendant's contention that the judge erred in
    refusing to dismiss the indictment against him. [511]

INDICTMENT found and returned in the Superior Court on
March 1, 1978.

A motion to suppress evidence was heard by *Colicchio*, J., a District Court judge sitting under statutory authority, and the case was tried before *Tisdale*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Samuel E. Greydanus, III (Irving H. Sheff* with him) for the defendant.

*James W. Sahakian*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J.  The defendant appeals his conviction for the unauthorized possession of amphetamine with intent to distribute.  He contends that his motion to suppress evidence of the drugs seized at the time of his arrest should have been allowed.  He bases his claim on principles of collateral estoppel and on the ground that the drugs were found incident to an unlawful arrest.  He also argues that his motions to dismiss the indictment and for a directed verdict were erroneously denied.  There was no error.

The facts, as established at the Superior Court hearing on the motion to suppress, are as follows.  On October 6, 1977, Malden police obtained a search warrant for the search of "the entire apartment located on the second floor above a business establishment named Vincent's Hair Designs, said building numbered 340 Broadway, Malden, Massachusetts, and being a two story construction of brick and wood . . . ." The warrant authorized the search of certain persons and the seizure of certain household furniture, which allegedly had been stolen.  Executing the warrant the same day, police officers found most, but not all, of the furniture they were seeking.  During the search of a bedroom, the officers opened what appeared to be a closet door and discovered stairs leading to an attic.  The only means of access to the attic was those bedroom stairs.  One of the officers testified that he went upstairs and saw there an open paper bag containing numerous bottles of drugs.  On the basis of the discovery of these drugs in the Malden apartment, the police obtained a warrant to arrest the defendant in Somerville on October 7, 1977.  At the time of his arrest, the defendant

was found to have twenty packets of amphetamine — the subject matter of the present action — on his person.

Prior to his trial on the felony charge in question, the defendant appeared in a District Court in Malden on two complaints arising from the seizure of drugs in the attic. The defendant's motion to suppress evidence of the drugs seized in the search of the apartment was allowed.[1] Thereafter, the District Court judge found the defendant not guilty on one complaint and dismissed the other complaint for lack of probable cause.

Subsequently, the Commonwealth obtained an indictment against the defendant with regard to the amphetamine seized at the time of his arrest. The defendant brought a motion to suppress, arguing, as he does now on appeal, that under the principles of collateral estoppel the Commonwealth is bound by the District Court judge's ruling that the seizure of drugs in the attic was illegal and that, given the fact that this prior illegal search provided the probable cause for all that followed, the arrest warrant, the arrest, and the search incident to the arrest were also unlawful so as to require suppression of evidence of the amphetamine. The defendant also argued that, regardless of the applicability of collateral estoppel, the attic did not constitute part of the second floor apartment. Consequently, he claims that the search exceeded the scope of the warrant and that drugs found in the attic could not establish the probable cause basis for the arrest warrant pursuant to which the am-

---

[1] The District Court judge made no findings despite the numerous contentions underlying the defendant's motion, including lack of probable cause for the search warrant for furniture; facial insufficiency of the search warrant application and affidavits; lack of proof of informer's reliability or of affiant's independent corroboration; extension of the search beyond the scope of the warrant; seizure of property not listed in the search warrant and not a proper subject for seizure; and the illegal and unreasonable execution of the warrant. At the hearing on the motion in Superior Court, however, both the defendant and the Commonwealth argued that the District Court judge's ruling was based on the illegality of the search of the third floor attic under a warrant authorizing a search of "the entire apartment located on the second floor."

phetamine was found. The defendant's motion was denied, as was his application for an interlocutory appeal before this court. Following his trial and conviction, the defendant sought review in the Appeals Court, which affirmed his conviction. *Commonwealth* v. *Scala*, 8 Mass. App. Ct. 202 (1979). We granted the defendant's petition for further appellate review.

Although we reach the same result, our reasoning differs in two ways from that of the Appeals Court. First, we recognize only the double jeopardy underpinnings of criminal collateral estoppel without reaching the question of its possible due process justifications. Second, we consider and reject, under the substantial risk of miscarriage of justice standard, arguments with regard to the attic search that were not raised below. Like the Appeals Court, we conclude that the warrant designation of the entire second floor apartment encompassed the third floor attic and that the defendant's motion for a directed verdict and his motion to dismiss the indictment are without merit.

1. We turn first to consider the possible application of the doctrine of collateral estoppel to the instant case.[2] Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson*, 397 U.S. 436, 443 (1970). Although first developed in civil litigation, collateral estoppel is relevant in criminal proceedings as part of the Fifth Amendment's guaranty against double jeopardy,

---

[2] The Commonwealth argues that the defendant's assignment of error pertaining to the admission of the controlled substance seized at the time of his arrest does not specifically set forth any allegation that the principles of collateral estoppel were violated. Consequently, it argues that that ground is not fully before us, see G. L. c. 278, § 33D, and that review must be under the standard of a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Clark*, 378 Mass. 392, 397 (1979); *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). Although we agree that the defendant's language is somewhat garbled, we nonetheless think that the ground was properly preserved in the assignment of error.

applicable to the States through the Fourteenth Amendment. *Ashe* v. *Swenson, supra* at 445-446.

To prevail under the *Ashe* collateral estoppel doctrine, the defendant must have been placed in jeopardy twice for the same offense. See *United States ex rel. DiGiangiemo* v. *Regan*, 528 F.2d 1262, 1265 (2d Cir. 1975), cert. denied sub nom. *DiGiangiemo* v. *Olgiatti*, 426 U.S. 950 (1976). The defendant argues that the illegal attic search links his Superior Court felony conviction to his District Court misdemeanor acquittal so that the two offenses constitute "a single alleged criminal transaction," which the Commonwealth is precluded from relitigating. See *Ashe* v. *Swenson, supra* at 445 n.10. This argument is without merit. The two charges did not involve the same time and place, nor did they involve an "identical mass of a single drug." See *Kuklis* v. *Commonwealth*, 361 Mass. 302, 308 (1972). The felony of which the defendant was convicted occurred in Somerville on October 7, 1977, and concerned the possession, with intent to distribute, of twenty packets of amphetamine. The misdemeanor of which he was acquitted related to the alleged possession, with intent to distribute, of talwin and allegedly arose in Malden on October 6, 1977. These are two separate offenses involving different sets of facts. They did not grow out of a single criminal transaction merely because the allegedly illegal attic search was a factor in each offense.[3] In light of the fact that the charged offenses transpired at different times and in different places and pertain to different types of drugs, the defendant's felony con-

---

[3] There is no question of the application of double jeopardy considerations with regard to the complaint which was dismissed for lack of probable cause, as no jeopardy attached in that action. See *Burke* v. *Commonwealth*, 373 Mass. 157 (1977).

Even were we to espouse Mr. Justice Brennan's capacious concept of what constitutes a criminal "transaction" for purposes of double jeopardy, see *Ashe* v. *Swenson, supra* at 453 (concurring opinion), the defendant's argument would fail. "[N]ot even that broad measure would embrace two crimes of different types committed at different times." *Maldonado, petitioner*, 364 Mass. 359, 363 n.5 (1973). Cf. *Commonwealth* v. *Lovett*, 374 Mass. 394, 398 (1978).

viction, after his acquittal on the misdemeanor charge, did not implicate double jeopardy concerns.[4] See *Commonwealth* v. *Lovett*, 374 Mass. 394, 398 (1978); *State* v. *Doucet*, 359 So. 2d 1239, 1245, 1247 (La. 1977) (on rehearing). Thus the Federal constitutional doctrine of collateral estoppel announced in *Ashe* v. *Swenson*, 397 U.S. 436 (1970), does not aid the defendant.

It has been suggested, however, that the due process clause, independent of the double jeopardy clause, may embrace collateral estoppel safeguards.[5] *United States ex rel. DiGiangiemo* v. *Regan, supra* at 1265-1266. Influenced by collateral estoppel policy considerations, such as judicial inefficiency and the danger of prosecutorial harassment, as evidenced by the disparity of resources between the State and a criminal defendant, and the strain of a second prosecution in which the same nonjeopardy issues would be relitigated, the United States Court of Appeals for the Second Circuit stated in dictum that due process provides at least

---

[4] Given this basis of our holding, we need not reach the question whether a fact determined in the course of ruling on a motion to suppress may be termed an "ultimate fact" in the *Ashe* sense. Cf. *United States ex rel. DiGiangiemo* v. *Regan*, 528 F.2d 1262 (2d Cir. 1975), cert. denied sub nom. *DiGiangiemo* v. *Olgiatti*, 426 U.S. 950 (1976) (assumed without discussion that ruling resulting from motion to suppress is ruling on issue of "ultimate fact"); *Laughlin* v. *United States*, 344 F.2d 187, 191 (D.C. Cir. 1965) (ultimate facts are those which the law makes the occasion for imposing its sanctions); *State* v. *Doucet*, 359 So. 2d 1239, 1244 (La. 1977) ("finding that evidence seized is the product of an unreasonable warrantless search constitutes a finding of 'ultimate fact'"), modified on rehearing on related ground, 359 So. 2d 1245 (La. 1978). But cf. 3 W.R. La-Fave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(g), at 530, 532 (1978) ("certainly not beyond dispute" that fact determined in course of ruling on motion to suppress is "ultimate fact").

[5] The Supreme Court in *Ashe* v. *Swenson*, 397 U.S. 436, 442-443 (1970), did not affirmatively adopt collateral estoppel as a due process requirement; but it did not foreclose such a requirement either, for it could be argued that the *Ashe* result cast some doubt on the rule of *Hoag* v. *New Jersey*, 356 U.S. 464 (1958) (defendant tried and acquitted on three separate indictments for robbery of three persons on same occasion could later be tried and convicted of robbing fourth person during same incident without violating due process clause), where prior litigation has decided an issue of ultimate fact between the State and the same defendant.

some collateral estoppel protection in criminal cases. *Id.* at 1265-1266, 1269. Even so, the court was careful to limit such protection. It concluded that due process would forbid the relitigation by a State of an issue determined adversely to it in a suppression hearing only in those cases where the State had an opportunity for a full hearing and at least one appeal as of right. *Id.* at 1266.

These limiting factors were seemingly mandated by the passage in the *Ashe* opinion which described collateral estoppel as applying when "an issue of ultimate fact has once been determined by a valid and *final* judgment." See *Ashe* v. *Swenson, supra* at 443 (emphasis supplied). The court noted that "[f]actors supporting a conclusion that a decision is final for this purpose are 'that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal.'" *United States ex rel. DiGiangiemo* v. *Regan, supra* at 1265, quoting from Restatement (Second) of Judgments § 41 (Tent. Draft No. 1, 1973). All these factors had been satisfied with regard to the suppression motion under consideration in *DiGiangiemo. Id.* at 1265. However, such is not the case here. First of all, we have no record of the District Court suppression hearing[6] and consequently cannot determine whether the ruling reflected a "full and careful determination of the issue[s]." See *Watts* v. *United States,* 402 F.2d 676, 685 n.24 (D.C. Cir. 1968), rev'd on other grounds, 394 U.S. 705 (1969). At least one court has refused to hold a lower court's nonappealable ruling suppressing evidence in a nonjeopardy situation binding on the trial court when there was no record to support the prior ruling. See *State* v. *Kangiser,* 8 Or. App. 368, 371 (1972); *State* v. *Stahley,* 7 Or. App. 464, 468 (1971). See also *State* v. *Swain,* 267 Or. 527, 531 (1974) (subsequent legislation provided for appeal of suppression order). Second, the prerequisite of an appeal as of right is not satisfied here. See *Cook* v. *State,* 281 Md. 665,

---

[6] See note 1, *supra.*

674-675 (1978); 3 W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(g), at 532 (1978) (Ex. 1); Restatement (Second) of Judgments § 68.1(a) and Comment on cl. (a) (Tent. Draft No. 4, 1977). Cf. *Rudow v. Fogel*, 376 Mass. 587, 591-592 (1978) (civil case). At the time of the proceedings below,[7] G. L. c. 278, § 28E, as amended by St. 1972, c. 740, § 16, permitted a prosecutorial appeal only from a Superior Court, not a District Court, order allowing a defendant's motion to suppress.[8]

In view of the then statutory limitation on the Commonwealth's right to appeal and in view of the absence of any transcript or findings from the initial suppression hearing in this action, the *DiGiangiemo* dictum by its own terms is inapplicable. Consequently, we need not reach the question whether the policies cited by the Second Circuit warrant the application of collateral estoppel as an incident to due process.[9] However, we note that it is far from clear in non-

---

[7] As of July 1, 1979, rulings on motions to suppress in the District Courts are appealable by the Commonwealth. G. L. c. 278, § 28E, as appearing in St. 1979, c. 344, § 45. See Mass. R. Crim. P. 15 (a) (2), 378 Mass. 882 (effective July 1, 1979).

[8] We do not view the possibility of review of interlocutory decisions under G. L. c. 211, § 3, according to the "exceptional circumstances" standard of *Gilday* v. *Commonwealth*, 360 Mass. 170, 171 (1971), and its progeny, as a right of appeal for purposes of collateral estoppel. Cf. *Commonwealth* v. *Frado*, 372 Mass. 866 (1977); Restatement (Second) of Judgments § 68.1 and comment on cl. (a) (Tent. Draft No. 4, 1977). Nor do we consider, as the defendant urges, the Commonwealth's "right to appeal" to the grand jury after a District Court finding of no probable cause (see *Burke* v. *Commonwealth*, 373 Mass. 157, 159-162 [1977]), a right to appeal an adverse suppression ruling for purposes of collateral estoppel.

[9] See *State* v. *Doucet, supra* at 1245, 1248 (on rehearing), where the Supreme Court of Louisiana rejected the *DiGiangiemo* dictum. The court concluded that its exercise of supervisory jurisdiction, coupled with the double jeopardy protection accorded under *Ashe* v. *Swenson, supra,* was sufficient to prevent prosecutorial abuse. As for concern over the waste of effort involved in relitigating a matter already determined, the court concluded that judicial efficiency did not justify the possible perpetuation of erroneous rulings that frustrate, rather than advance, justice. See also *United States ex rel. Hubbard* v. *Hatrak*, 588 F.2d 414, 419 (3d Cir. 1978), cert. denied, 440 U.S. 974 (1979) (*DiGiangiemo* dictum noted but neither approved nor disapproved).

jeopardy situations that the possible preclusive effect of a pretrial order granting a motion to suppress should be controlled by policies underlying the collateral estoppel doctrine rather than those underlying the Fourth Amendment and the exclusionary rule, especially where, as here, it is evident on review that the evidence was lawfully seized. See discussion *infra.* Cf. 3 W.R. LaFave, *supra,* § 11.2(g), at 532-534. It has been observed that "[t]he exclusionary rule as it applies to the Fourth Amendment has conceptual validity only if it is applied to prevent the introduction of illegally seized evidence, for only then will it have the desired deterrent effect. [See *Stone* v. *Powell,* 428 U.S. 465, 486 (1976).] A rule of collateral estoppel which would work to prevent the introduction of *legally* seized evidence merely because that seizure has been incorrectly decided to be unconstitutional would not accord with the purposes of exclusion and would have no relationship to fundamental fairness." *State* v. *Doucet,* 359 So. 2d 1239, 1245, 1248 (La. 1977) (on rehearing).

In sum, we hold that in the circumstances of the present case, where the defendant was not twice placed in jeopardy for the same offense and where the suppression ruling of the District Court judge could not be appealed and was not supported by a record, the application of the doctrine of collateral estoppel is not constitutionally required.

2. We next examine the validity of the attic search. The defendant argues that the attic was not within the scope of the premises described in the search warrant. It is well settled that the Fourth Amendment requires particularity in warrants, which "are to be read without poetic license." *Commonwealth* v. *Hall,* 366 Mass. 790, 799 (1975). However, the proscription of poetic license is not also a proscription of common sense. See *Commonwealth* v. *Corradino,* 368 Mass. 411, 416 (1975).

As noted previously, the building in question was represented in the search warrant as consisting of two stories. The third floor not being evident from exterior observation, the place to be searched was described in the warrant in ac-

cordance with the outward appearance of the building. See *Commonwealth* v. *Rugaber,* 369 Mass. 765, 767 (1976). The warrant authorized a search of "the entire apartment located on the second floor above a business establishment." The evidence reasonably indicates that the third floor attic was part and parcel of the second floor apartment. Its single entrance was via the second floor apartment; it was directly above and adjacent to that apartment and had no separate address; there were no other apartments sharing the attic, which apparently had no connection with the first floor business establishment. In these circumstances, we conclude that the warrant designation of the entire second floor apartment encompassed the third floor attic.[10] Consequently, the search of the attic and the ensuing seizure of drugs in plain view, see *Commonwealth* v. *Bond,* 375 Mass. 201, 206-207 (1978), were proper. See *United States* v. *Evans,* 320 F. 2d 482, 483 (6th Cir. 1963) (warrant for 1000 Baldwin Street held to cover attic of 1004 where common wall between two attics broken through, lower floors of 1004 sealed off, and two attic areas used as one); *United States* v. *Palmisano,* 386 F. Supp. 599, 599-600 (E.D. Wis. 1974) (warrant authorizing search of premises at stated address, described as single story brick structure, held to include basement); *Rainey* v. *State,* 74 Wis. 2d 189, 202-206 (1976) (warrant describing only first floor permitted search of balcony room somewhat above first floor where that room reached only by means of first floor apartment).

3. The remaining claims of the defendant with regard to the attic search must fail. In this appeal he attacks the

[10] *Commonwealth* v. *Hall,* 366 Mass. 790, 791 (1975), is not to the contrary. There we held that a warrant authorizing a search of "certain rooms in the 2nd fl apt 2nd fl of 2½ wooden dwelling house" did not cover a search of a totally distinct third floor apartment. We noted, however, that we did not intend "to lay down a rule that the description in a warrant of the location and area to be searched may never be construed more liberally than in the present case. For example, the evidence when the warrant is executed may show that the illegal activities spill over into a directly adjacent or contiguous area under the same control, in which case a liberalized reading of the warrant may be proper." *Id.* at 800 n.11. Such is the case before us.

denial of his motion to suppress on grounds not raised before the trial judge, namely that (1) there was insufficient connection between the defendant and the Malden apartment; that (2) there was no evidence of the defendant's dominion or control over the controlled substances seized in the attic; that (3) the contraband was not in plain view; and that (4) contraband may not be lawfully seized in the execution of a search warrant describing other property. Because these contentions were never presented to the trial judge, they are not technically before us, except under the standard of a substantial risk of miscarriage of justice. *Commonwealth* v. *Clark,* 378 Mass. 392, 397 (1979). *Commonwealth* v. *Johnson,* 371 Mass. 862, 867 (1977). *Commonwealth* v. *Lewis,* 346 Mass. 373, 382-383 (1963), cert. denied, 376 U.S. 933 (1964). But even under a less restrictive standard of review, there would be no error in the denial of the defendant's motion to suppress.

The first three grounds argued by the defendant concern factual matters not clearly resolved by the record.[11] This is not to say, however, that the Commonwealth's case is fatally defective. Where, as here, the search and the arrest were *pursuant to warrants,* "the general rule that on a motion to suppress the burden of establishing that evidence has been illegally obtained is on the moving party" is fully applicable. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 56-57 (1974), and cases cited. "[T]he defendant could, by a few very simple questions put to the arresting officers during the hearing on the motion to suppress, have easily raised, and

---

[11] Contrary to the defendant's claim, there is evidence in the record connecting him with the Malden apartment. At the time of the search, one of the occupants named in the warrant indicated to police officers that a particular bedroom was "Frank's room," referring to the defendant. In addition, the defendant acknowledged the apartment as his residence in both the motion to suppress and the affidavit in support thereof, where the apartment is referred to as "my apartment" and the "defendant's home." There is also testimony contradicting the contention that the seized drugs were not in plain view. On the other hand, the record is utterly barren of any information relative to the defendant's control over the drugs found in the attic.

perhaps resolved, th[ese] specific issue[s] and, at that time, required the prosecution to have introduced evidence on the issue[s] now raised here for the first time on appeal." *Id.* at 65-66 (Tauro, C.J., dissenting in part). Therefore, the defendant must accept the consequences of his failure to raise these issues.

The defendant's final argument, that contraband may not be lawfully seized in execution of a search warrant describing other property, misconstrues the law of this Commonwealth. In *Commonwealth* v. *Bond,* 375 Mass. 201, 206 (1978), this court recognized that contraband was among the articles in plain view that police officers could seize in the course of "a continuing search directed to finding [other] designated materials." In the present case, the police had not located all the furniture listed in the search warrant when they discovered the attic steps. There is evidence that upon entering the attic, one of the officers inadvertently came upon an open bag containing numerous bottles of drugs. The officer could reasonably believe the drugs to be illegally obtained and, accordingly, had the right to seize them as contraband.

4. The defendant's motions for a directed verdict and for a dismissal of the indictment are without merit. With regard to the motion for a directed verdict, the defendant contends that the Commonwealth failed to prove his intent to distribute the drug. However, there was evidence before the jury that the individual packets of amphetamine were "awful fat" and had a street value of $280 a packet. There were twenty packets. Intent to distribute may be inferred from the quantity of drugs possessed by the defendant at the time of his arrest. *Commonwealth* v. *Rugaber,* 369 Mass. 765, 770 (1976). *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970).

The defendant's motion to dismiss the indictment was not timely filed. Rule 60 of the Superior Court (1974). See *Commonwealth* v. *Beneficial Fin. Co.,* 360 Mass. 188, 229-231 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts,* 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v.

Massachusetts, 407 U.S. 914 (1972); Mass. R. Crim. P. 13 (d) (2) (A), 378 Mass. 873 (effective July 1, 1979). Moreover the defendant's contention that the indictment was predicated on erroneous and biased information was properly left for consideration by the judge and the jury at the trial. See *Commonwealth* v. *Robinson,* 373 Mass. 591, 592-593 (1977); *Commonwealth* v. *Ventura,* 294 Mass. 113, 120-121 (1936). He has not cited facts or law to support a finding that there was an impairment of the grand jury's integrity. See *Commonwealth* v. *Gibson,* 368 Mass. 518, 525 (1975).

*Judgment affirmed.*