COMMONWEALTH *vs.* ROBERT J. ALLAIN
(and a companion case[1]).

No. 93-P-313.

Worcester. October 27, 1993. - June 3, 1994.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Collateral Estoppel. Constitutional Law,* Double jeopardy, Search and
seizure. *District Court,* Probable cause hearing. *Practice, Criminal,*
Appeal by Commonwealth, Double jeopardy, Probable cause hearing,
Interlocutory appeal, Grand jury proceedings. *Search and Seizure,*
Probable cause.

In the circumstances of a criminal case in which a District Court judge
agreed to hear motions to suppress evidence at a probable cause hearing
on complaints over some of which the District Court had concurrent
jurisdiction with the Superior Court, and he thereafter allowed the mo-
tions to suppress and then found no probable cause on the complaints,
the guarantee against being twice placed in jeopardy was not applicable
to bar subsequent prosecution of the defendants on indictments for the
same crimes where the defendants were not placed in jeopardy at the
probable cause hearing because the finding of no probable cause was
not a final judgment [597-599]; nor was the judge's allowance of the
defendants' motion to suppress evidence a final determination with
preclusive effect, where appellate review of his ruling was expressly pro-
hibited under Mass.R.Crim.P. 15 (a) (3) (A) and the provisions for
review under G. L. c. 278, § 28E, were not applicable [599].

A Superior Court judge correctly denied a criminal defendant's motion to
suppress evidence, where the record of a hearing on the motion sup-
ported his conclusions that police officers had properly stopped a motor
vehicle for traffic violations, had observed marihuana cigarettes in plain
view in the vehicle's ashtray, and thereupon had probable cause to ar-
rest the defendant and search for other controlled substances in the im-
mediate vicinity. [602]

---

[1]Commonwealth *vs.* Richard A. Cormier. Both defendants were charged
with trafficking in cocaine (G. L. c. 94C, § 32E[*b*]); possession of cocaine
with intent to distribute (G. L. c. 94C, § 32E[*b*]); conspiracy to violate
the controlled substances laws (G. L. c. 94C, § 40); and unlawful
possession of marihuana (G. L. c. 94C, § 34).

COMPLAINTS received and sworn to in the Worcester Division of the District Court Department on June 21, 1990.

Motions to suppress evidence were heard by *Milton H. Raphaelson*, J.

INDICTMENTS found and returned in the Superior Court Department on May 14, 1991.

Pretrial motions to suppress evidence and to dismiss were heard by *James P. Donohue*, J., and the cases were tried before him.

*Gregory V. Roach* for Robert J. Allain.

*Donald D. Deren* for Richard A. Cormier.

*James P. McKenna*, Assistant District Attorney, for the Commonwealth.

GREENBERG, J. On the morning of a scheduled "bind-over" hearing, the government asked a District Court judge to hear the defendants' pending motions to suppress certain evidence. Prior to the hearing, the judge agreed to decide the suppression motions and chose not to exercise final jurisdiction over those crimes alleged in the complaint over which the District Court had concurrent jurisdiction with the Superior Court. See G. L. c. 218, § 30.[2] A hearing then followed in District Court to decide whether the controlled substances upon which the complaints were based were unconstitutionally seized and, if so, whether probable cause remained to bind the defendants over to the Superior Court. The judge allowed the motions to suppress, and as to all of the charges no probable cause was found.

A presentment to the grand jury followed, and the defendants were indicted for the same crimes charged by the complaints. See *Commonwealth* v. *A Juvenile*, 409 Mass. 49, 52

---

[2]It was possible for the District Court judge to exercise final jurisdiction over all charges, with the exception of the trafficking complaints. The importance of a District Court judge announcing "unambiguously" at the outset his or her intention to decline or accept final jurisdiction over an offense that is within the concurrent jurisdiction of the District Court was highlighted in *Commonwealth* v. *Mesrobian*, 10 Mass. App. Ct. 355, 357 (1980). That election is decided by the judge, not the prosecutor. See *Commonwealth* v. *DeFuria*, 400 Mass. 485, 488 (1987); *Commonwealth* v. *Zannino*, 17 Mass. App. Ct. 73, 78-99 (1983).

(1991). During the grand jury proceeding, evidence previously suppressed at the District Court hearing was introduced by the government.

After the defendants were arraigned in the Superior Court, they refiled motions to suppress on the same grounds alleged in the District Court motions. Moreover, they filed motions to dismiss that alleged the indictments were barred by collateral estoppel. After a hearing, a Superior Court judge denied both motions. A single justice of the Supreme Judicial Court denied the defendants' request to pursue interlocutory appeals. After a joint trial, the defendants were convicted of trafficking in cocaine, and each defendant was sentenced to ten to twelve years imprisonment at the Massachusetts Correctional Institution (M.C.I.), Cedar Junction. Both were acquitted of illegal possession of marihuana.

Refusal by the Superior Court to dismiss the indictments on the basis of collateral estoppel is the principal ground of appeal. The defendant Cormier also claims that the Superior Court judge mistakenly denied the motion to suppress. We resolve both issues in favor of the government.

*Collateral estoppel.* Considered without regard to background or context, collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Commonwealth* v. *Scala*, 380 Mass. 500, 503 (1980), quoting from *Ashe* v. *Swenson*, 397 U.S. 436, 443 (1970). Collateral estoppel is relevant in criminal cases as a part of the guarantee against double jeopardy under the Fifth Amendment to the Federal Constitution, applicable to the States through the Fourteenth Amendment. *Commonwealth* v. *Scala, supra* at 503-504. "Although not expressly included in the Massachusetts Declaration of Rights, the guarantee against double jeopardy has long been recognized as a part of our common law." *Commonwealth* v. *Woods*, 414 Mass. 343, 346, cert. denied, 114 S.Ct. 65 (1993).

"To prevail under the *Ashe* collateral estoppel doctrine, the defendant must have been placed in jeopardy twice for

the same offense." *Commonwealth* v. *Scala, supra* at 504. "[T]he long prevailing test in this Commonwealth is whether each crime requires proof of an additional fact that the other does not. *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871)." *Commonwealth* v. *Jones,* 382 Mass. 387, 393 (1981).

In order for the collateral estoppel aspect of the double jeopardy doctrine to apply, there must be "a valid and final judgment." *Ashe* v. *Swenson, supra* at 443. The defendants focus their analysis on the "final judgment" prong of the *Ashe* definition. Relying on the factors in *Scala* which articulate finality, 380 Mass. at 506, the defendants mistakenly contend that the District Court judge's decision to suppress evidence was final because it was subject to appeal. They incorrectly claim that the Commonwealth was precluded from prosecuting the defendants in the Superior Court without taking an appeal from the District Court judge's order allowing the suppression motion.[3]

A determination of lack of probable cause is not a decision appealable by the government under Mass.R.Crim.P. 15(a)(3)(A), 378 Mass. 883 (1979). See *Commonwealth* v. *A Juvenile,* 409 Mass. at 51. Thus, if a probable cause hearing is held in the District Court, it will not be considered a final determination of the case. *Commonwealth* v. *Gonzalez,* 388 Mass. 865, 869-870 (1983). The District Court is limited to a determination whether the defendant "appear[s] to be guilty." G. L. c. 210, § 30. A District Court judge's decision to conduct a "bind-over" or probable cause hearing means that no trial on the merits has commenced. It follows that rulings on the admission of evidence during that proceeding have no preclusive effect in a subsequent Superior Court trial. *Commonwealth* v. *Lovett,* 374 Mass. 394, 397-398 (1978). *Commonwealth* v. *Gonzalez, supra.* See *Com-*

---

[3]Massachusetts R.Crim.P. 15(a)(2), 378 Mass. 882 (1979), derived from G. L. c. 278, § 28E, grants to the Commonwealth the right to prosecute an interlocutory appeal of a decision by a judge granting a motion to suppress evidence. See Reporters' Notes to Mass.R.Crim.P. 15, Mass. Ann. Laws, Rules of Criminal Procedure at 335-336 (Law. Co-op. 1979).

*monwealth* v. *Roby*, 12 Pick. 496, 501 (1832) ("where the court before . . . had no jurisdiction of the offence, the party cannot be deemed in law to have been put in jeopardy, *because no valid and binding judgment could have been rendered by such court*" [emphasis supplied]); *Commonwealth* v. *Many*, 14 Gray 82, 83 (1859). Except as to the determination of probable cause (or lack thereof), see *Commonwealth* v. *Friend*, 393 Mass. 310, 317 (1984), the lower court proceeding was a nullity. *Commonwealth* v. *Norman*, 27 Mass. App. Ct. 82, 83, *S.C.*, 406 Mass. 1001 (1989). The defendants were not put in jeopardy, and the doctrine of collateral estoppel is inapplicable.

The defendants' insistence that, pursuant to G. L. c. 278, § 28E, the decision allowing the motion to suppress evidence was itself subject to appeal gets them nowhere. The argument ignores the core premise: rule 15(a)(3)(A) permits interlocutory appeals by the Commonwealth only "if the District Court has retained jurisdiction over the offense charged" and forecloses any appeal of "matters arising out of a probable cause hearing." Additionally, the defendants argue that there is a conflict between rule 15(a)(3)(A) and G. L. c. 278, § 28E, and, therefore, the rule does not apply. Specifically, the defendants assert that § 28E permits the government to appeal from rulings allowing a motion to suppress evidence in "all criminal cases" to the Appeals Court, while, as stated, rule 15(a)(3)(A) prohibits appeals of matters arising out of probable cause hearings. The defendants' argument proves too much. General Laws c. 278, § 28E, is not a means for second guessing a District Court judge's evidentiary rulings arising out of a probable cause hearing. There is no conflict here. Nor is there any language in § 28E that creates a right of interlocutory review of a judge's ruling on probable cause.

Defendants who have a suppression question determined at a probable cause hearing may have a somewhat hollow victory given that the government may wipe out a favorable outcome by proceeding with a grand jury indictment. *Burke* v. *Commonwealth*, 373 Mass. 157, 161 (1977). *A Juvenile* v.

*Commonwealth,* 375 Mass. 104, 107 (1978). It does not prevent the accused who "appears" not guilty after a probable cause hearing from having to "run the gantlet" a second time. *Green* v. *United States,* 355 U.S. 184, 190 (1957). The law in this Commonwealth is well settled that if a judge finds that there is no probable cause, the defendant may still be indicted by the grand jury and tried in the Superior Court on the same evidence as that presented to the judge during the probable cause hearing. *Burke* v. *Commonwealth, supra* at 162. *Commonwealth* v. *A Juvenile,* 409 Mass. at 52. *Commonwealth* v. *McColgan,* 31 Mass. App. Ct. 932, 935 (1991). If the District Court discharges a defendant for lack of probable cause, that finding is not a conclusive determination as to guilt or innocence, and he may be indicted and tried in the Superior Court. See *Burke* v. *Commonwealth, supra; Commonwealth* v. *A Juvenile, supra.*

*Denial of the motion to suppress in the Superior Court.* The defendant Cormier contends that if the Superior Court judge had before him a proper motion to suppress evidence, not barred by collateral estoppel, his denial of the motion was erroneous. The facts relevant to the inquiry, summarized below, are drawn from the Superior Court judge's findings of fact and the transcript of the hearing on the motion to suppress.

At approximately 7:10 P.M. on June 20, 1990, Auburn police Officer Andrew Salukis was parked by the toll booth at interchange 10 of the Massachusetts Turnpike at the intersection of Route 12 and Interstate Route 290. He observed a white Trans Am automobile pass him, headed toward the toll booth. Officer Salukis proceeded onto Route 290 eastbound and observed the car speeding and committing lane violations. He activated his lights, and the car stopped in the breakdown lane, a few feet in front of the cruiser. From the cruiser, Officer Salukis observed three individuals, two in the front and one on the right side of the back seat. He got out of his cruiser and approached the driver's side of the car. The driver's side window was down. After requesting the driver's license and the car's registration, Officer Salukis saw what he

believed were four marihuana cigarettes in the ashtray among cigarette butts and ashes. During that time, he was looking through the driver's window at about a forty-five degree angle and stood just a few feet from the ashtray. Nothing obstructed his view of the ashtray. After the driver produced the requested documents, Officer Salukis requested and received identification papers from the two passengers.[4]

Officer Salukis brought the documents to his cruiser and requested a backup. A few minutes later, Officer Donna Fisher arrived at the scene. Officer Salukis informed her that he wanted to search the car and that he needed her assistance to guard the three individuals while he conducted the search. Officers Salukis and Fisher approached the car from opposite sides and instructed the men to get out of the car. The driver was pat frisked by Officer Salukis and the passengers by Officer Fisher. The passenger from the front seat was not wearing any shoes. Officer Fisher saw the marihuana in the ashtray. All three men were directed to stand by the guard rail. The passengers complied, but the driver nervously paced back and forth.

Officer Salukis proceeded to search the inside of the car. On the floor of the passenger side of the rear seat, he noticed a pair of white Reebok high top sneakers. As he probed the visor on the driver's side, he heard Officer Fisher ordering the driver to return to the guard rail. The driver refused and walked to the car, grabbed the Reebok sneakers, jumped the guard rail, and ran down the wooded embankment adjacent to Route 290. Officer Fisher gave chase. The passengers remained at the guard rail. Within moments, Sergeant Perry of the Auburn police department arrived at the scene, allowing Officer Salukis to join in the chase. Later, State Trooper Cortez arrived at the scene. The driver, by that time, had climbed over a chain link fence at the bottom of the embankment. Officer Salukis climbed the fence and apprehended the driver as he emerged from the woods onto Sword Street,

[4]The driver of the car was identified as Randy Lafortune, the front seat passenger Robert J. Allain and the rear passenger Richard A. Cormier. Lafortune's case was not tried with these defendants.

which is adjacent to Route 290. The driver was shirtless and had lost the Reebok sneakers. He was placed under arrest.

As Officer Fisher went down the embankment, she recovered a white insert to a sneaker and a plastic bag containing a white powdery substance (later identified as cocaine). Officer Salukis and Trooper Cortez searched the area where the sneaker insert was found and, on the other side of the fence, found two white Reebok high top sneakers. One sneaker contained a bag of a white powdery substance (also later determined to be cocaine). The driver and the passengers were taken to the Auburn police station, where a search of the car revealed the marihuana cigarettes in the ashtray, as well as two scales in the console.

The defendant argues that "the viewing [by the officer] of the roaches alone does not constitute probable cause." To support this conclusion, the defendant cites to numerous cases from other jurisdictions but conspicuously fails to cite or distinguish the case articulating the law of the Commonwealth, *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 688 (1984).

"It has been generally held that an officer with experience or training in narcotics, seeing in plain view a handrolled cigarette with pinched ends which his experience teaches him is likely to be marihuana, has probable cause (although he does not then smell the characteristic burning odor) to seize the cigarette, examine it, and investigate for the presence of other controlled substances." *Ibid.*

The court in *Skea* found "that the seizure and examination of the marihuana cigarette lying on the console of the automobile was constitutionally valid . . . [and gave] the police probable cause both to arrest Skea and to search him for additional marihuana or other controlled substances." *Id.* at 689 (citation omitted). See *Commonwealth* v. *Blatz*, 9 Mass. App. Ct. 603, 604-605 (1980) (discovery of some controlled substances gives probable cause to search for additional controlled substances in the vicinity). We find that the circumstances of the search of the car in the instant case fall squarely under the rule. The search was constitutional.

Accordingly, the denials of the motion to suppress and the motion to dismiss were correct.

*Judgments affirmed.*