Defendants’ motion to suppress. The defendants do not dispute that the affidavit supporting the application for the search warrant at issue established probable cause to search the second-floor apartment located at 801 Worthington Street, Springfield. Rather, they contend that in searching the padlocked, unfinished attic area located one-half floor above the apartment, the police officers exceeded the scope of the warrant, which called for a search of the apartment that “occupies the entire second floor” and which describes the building itself as a “2 and ih story, wood framed structure” containing multiple units. Considering the circumstances at the scene, we conclude that the attic is functionally part of the second-floor apartment. The search, therefore, did not exceed the scope of the warrant. See Commonwealth v. Scala, 380 Mass. 500, 508-509 (1980).
The only entrance to the attic is immediately adjacent to the second-floor apartment rear door, which was “ajar” when the police executed the search. Additionally, both the rear door of the apartment and the attic entrance open up to a landing in a hallway that leads directly down to a locked door at the street. The first-floor apartment apparently accesses neither the rear hallway nor the second-floor landing, and the judge found that the same key unlocks both the second-floor apartment and the rear, street-level door.[2] This indicates that because neither the public nor other tenants have access to the rear *888 hallway and landing area, only the second-floor occupants had control over that area and, consequently, to the padlocked attic space itself.[3]
When the officers applied for the warrant, however, they only had reason to know that the building contained multiple units and two and one-half stories.[4] Consequently, they did not know that the floor above the second-story apartment was connected in any way to the apartment, and they were not required to do more to obtain information about the actual configuration, since such inquiries might have unnecessarily jeopardized the investigation. See Commonwealth v. Demogenes, 14 Mass. App. Ct. 577, 582 (1982). See also Commonwealth v. Carrasco, 405 Mass. 316, 324 (1989) (“Nothing in the record suggests that, without going into the premises and investigating the second floor, the police should have suspected and could have discovered that there were two apartments on the second floor”).
On the other hand, once the police entered the building to execute the warrant, it became apparent that the attic was indeed part of the second-floor apartment, and not an entirely separate area or unit with a different address. The facts here are thus distinguishable from those in Commonwealth v. Hall, 366 Mass. 790, 798-800 (1975), which the defendants cite as supporting suppression. In Hall, the warrant specified certain rooms in a second-floor apartment, and it was shown that officers at the scene understood the warrant to limit the scope of the search to those particular rooms. Id. at 799. The Supreme Judicial Court thus concluded that in those circumstances, the warrant could not be interpreted to extend to a separate third-floor apartment. Id. at 799-800. As we stated previously, that is not the case here because the warrant specified the entire second-floor apartment. Moreover, the officers at the scene understood the warrant to encompass the entire apartment, and based on their observations upon executing the warrant, they properly concluded that the attic area, although located one-half level above, was part of the apartment itself.
Furthermore, that the door to the attic was in the rear hallway and not inside the apartment is of no legal significance. Unlike in Commonwealth v. Scala, supra at 501, where access to the attic was through what appeared to be a closet door within the apartment, here the door was in the rear hallway. What is key here is that the rear hallway area and the attic had all the indicia of being part and parcel of the second-floor apartment, thus supporting the judge’s conclusion that the warrant was intended to authorize, and did authorize, the search of the attic area.
Accordingly, in these circumstances, the warrant could be read to extend to the attic space as a contiguous part of the second-floor apartment, and the officers need not have applied for a second warrant once that fact was discovered. Compare id. at 508-509; Commonwealth v. Dominguez, 57 Mass. App. Ct. 606, 609-611 (2003) (although not specified, a warrant extended to an interior apartment in circumstances in which officers could not have reasonably known that the structure was not in fact a single family dwelling). See *889 Commonwealth v. Thomas, 358 Mass. 771, 774-775 (1971) (discussing what is considered to be within a tenant’s curtilage in modem urban multi-unit dwellings and suggesting that, while narrower in scope than a single family dweller’s, the curtilage of a tenant’s dwelling can be said to extend to “any separate areas subject to his exclusive control”).
William R. Hill, Jr., Committee for Public Counsel Services, for Marquic Brown.
Sufficiency of the evidence against Wallace. The judge properly denied Wallace’s motion for a required finding of not guilty on both charges as there was sufficient evidence to convict him, based on a joint venture theory, of trafficking cocaine out of the second-floor apartment at 801 Worthington Street.
Under this theory “it is not necessary to show that the defendant himself possessed the narcotics [and ammunition], either actually or constructively.” Commonwealth v. James, 30 Mass. App. Ct. 490, 499 (1991). In these circumstances, it is sufficient that the Commonwealth prove beyond a reasonable doubt that Wallace was “(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit [the] crime, and (3) by agreement is willing and available to help the other if necessary.” Commonwealth v. Tavares, 61 Mass. App. Ct. 385, 388 (2004), quoting from Commonwealth v. Carroll, 439 Mass. 547, 553 (2003). That burden was met here.
Viewed in the light most favorable to the Commonwealth, the jury reasonably could have found the following facts. Wallace was observed together with Brown at 801 Worthington Street during each surveillance prior to the arrest. Wallace was also present in the second-floor apartment numerous times when various individuals were seen entering the apartment building and then leaving shortly thereafter, evidence suggestive of a large scale drug operation. See Commonwealth v. Parapar, 404 Mass. 319, 323 (1989). Additionally, the evidence indicated Wallace was inside the apartment during a controlled buy between Brown and an undercover officer that occurred on the front second-floor landing. This controlled buy happened immediately before the search warrant was executed, at which point Wallace was actually found in the apartment with Brown.
Finally, there was evidence that Wallace had a large amount of cash on him ($738), and personal items identifying Wallace and linking him to 801 Wor-thington Street were found inside the rear bedroom of the second-floor apartment, where 3.91 grams of crack cocaine were also recovered. As for the attic area, a photograph of Wallace and Brown together was discovered there, along with 88.99 grams of crack cocaine, paraphernalia consistent with a large scale distribution operation, and the rounds of ammunition. Viewed in the aggregate, the evidence presented supports the reasonable inference that Wallace was not merely an innocent bystander, but rather one who was knowingly engaged in the drug dealing enterprise and who was willing and available to help Brown out if necessary. The motion for a required finding of not guilty was thus properly denied.[5]

Judgments affirmed.

Michele R. Moretti for Anthony Wallace.
Bethany C. Lynch, Assistant District Attorney, for the Commonwealth.

The defendants make no claim that the judge’s finding in this regard is clearly erroneous. In any event, the inference is reasonable that the first-floor tenant’s key would not operate the street-level rear door given the absence of direct access from the first-floor apartment to the rear hallway and second-floor landing.

The key to the padlock was recovered from Brown’s person. Neither defendant challenges the seizure of the key or its use in the padlock.

Although controlled buys took place at the second-floor apartment, the record indicates that they were all conducted by entering the front door. Thus, access to the attic area, which was at the rear of the apartment, would not have been within view.

Wallace renewed his motion after he rested his case. We have reviewed the evidence presented by Wallace to consider whether the Commonwealth’s case deteriorated, see Commonwealth v. Walker, 401 Mass. 338, 343 (1987), and conclude that it did not. The trial judge correctly denied this motion as well.