COMMONWEALTH *vs.* JASON FORBES.

No. 12-P-1712.

Hampden. November 5, 2013. - April 8, 2014.

Present: CYPHER, BROWN, & FECTEAU, JJ.

*Search and Seizure,* Warrant, Affidavit, Probable cause. *Constitutional Law,*
    Search and seizure. *Practice, Criminal,* Warrant, Affidavit, Motion to
    suppress. *Probable Cause.*

A Superior Court judge properly denied a criminal defendant's pretrial motion
    to suppress evidence discovered during a search of the defendant's apart-
    ment conducted pursuant to a warrant (which was a second warrant that is-
    sued after the police discovered the defendant resided in a third-floor,
    rather than second-floor, apartment), where the affidavit supporting the
    warrant provided probable cause to believe that evidence of contraband
    would be found in the apartment, in that the informant's statements about
    the defendant's ongoing drug distribution business were not stale, and in
    that the affidavit established a nexus between the defendant's drug-selling
    activity and his residence; further, the additional information provided in
    the affidavit supporting the second search warrant neither established nor
    detracted from the probable cause evident in the affidavit supporting the
    first warrant [173-175]; and where the unlawful search of the premises
    conducted by the police prior to the issuance of the second warrant did not
    necessitate suppression, in that the second search warrant was valid and
    not improperly bolstered by exploitation of the prior illegality. [175-176]
A criminal defendant was not entitled to a hearing pursuant to *Franks* v.
    *Delaware,* 438 U.S. 154 (1978) *(Franks* hearing), where the judge, after
    conducting an in camera hearing to determine whether the defendant must
    receive a *Franks* hearing, was within his discretion in finding that the
    defendant had not substantially shown that the affidavit in support of the
    search warrant contained intentionally false statements or statements made
    with reckless disregard for the truth. [176-177]

INDICTMENTS found and returned in the Superior Court Depart-
ment on July 28, 2010.

Pretrial motions to suppress evidence were heard by *C. Jeffrey
Kinder,* J., and *Cornelius J. Moriarty, II,* J.

An application for leave to prosecute an interlocutory appeal

was allowed by *Ralph D. Gants*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*John M. Thompson* (*Vincent A. Bongiorni* with him) for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

CYPHER, J. In this interlocutory appeal, the defendant, Jason Forbes, seeks reversal of orders by two different judges in the Superior Court, one denying the defendant's motion to suppress and the other denying the defendant's request for a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154 (1978) (*Franks*). The defendant argues that the judge deciding the motion to suppress erred in concluding that a second search warrant affidavit established independent probable cause to search the defendant's apartment. He further argues that the police's exploitation of an improper search requires suppression of evidence in order to deter future police misconduct. We affirm.

*Background.* The defendant was charged with trafficking in cocaine, distribution of a class D substance, a drug violation near a school or park, possession of a firearm without a firearm identification card, possession of a firearm in the commission of a felony, improper storage of a firearm, and two counts of assault and battery on a police officer. The defendant filed a motion to suppress evidence in which he also sought disclosure of the identity of an informant, and a *Franks* hearing regarding alleged police misconduct. On July 28, 2011, a Superior Court judge conducted a limited, in camera hearing pursuant to *Commonwealth* v. *Amral*, 407 Mass. 511 (1990). The judge denied the defendant's request for a *Franks* hearing. A different Superior Court judge subsequently allowed that portion of the defendant's motion seeking to suppress the evidence of a firearm but denied the motion with regard to the remaining evidence.

A single justice of the Supreme Judicial Court granted the defendant's application for leave to prosecute an interlocutory appeal, see Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), and transferred the matter to the Appeals Court.[1]

---

[1] The Commonwealth also requested leave to file an interlocutory appeal, which was likewise allowed by the single justice and transferred to the Appeals

*Facts.* The background facts as found by the judge after an evidentiary hearing on the motion to suppress are as follows.[2] On June 21, 2010, Chicopee police Lieutenant Lonny Dakin, an experienced narcotics investigator, procured a search warrant for the premises located at 212-214 Hampden Street, second-floor apartment, in Chicopee.[3] The defendant was the target of the warrant.

Dakin authored the affidavit in support of the application for the search warrant. Read as a whole, the affidavit narrates the following. Within four months of June 21, 2010, Dakin spoke with a confidential informant. The informant told Dakin that the defendant was selling cocaine and pills from the second-floor apartment of 212-214 Hampden Street, which the defendant purportedly shared with another male. The informant stated that he or she had been to that location and personally purchased drugs from the defendant. The informant would "observe the defendant come down from the second floor apartment and sell to him on the porch." The affidavit stated that "[the informant] has also been to 212/214 Ham[p]den St. Chicopee, MA a couple of times with a third party. Sometimes the third party would go in to the second floor apartment to purchase from [the defendant] and sometimes [the defendant] would come out of the front door of 212/214 Hampden St. to sell to the third party."

The informant described a pickup truck that the defendant drove. Surveillance by Dakin confirmed that the vehicle, registered to the defendant, was parked in the driveway of 212-214 Hampden Street.

---

Court. On the Commonwealth's motion, the Appeals Court dismissed the Commonwealth's appeal with prejudice, and the propriety of the order suppressing the firearm therefore is no longer before us.

[2]"In reviewing the denial of a motion to suppress, we accept the judge's findings of fact absent clear error." *Commonwealth* v. *Damian D.*, 434 Mass. 725, 726 (2001). We then "conduct an independent review of [the judge's] ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). Our duty is to determine "the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

[3]At the time Dakin applied for the first warrant, he was not aware of that the premises contained a third-floor apartment. He knew only that it was a three-story wood frame building with two front doors, separately numbered 212 and 214.

On June 14, 2010, the informant told Dakin that the defendant was still dealing cocaine and pills from the apartment and that within the past three days, the informant had seen the defendant enter the premises with three ounces of cocaine. Within three days of June 21, 2010, the informant told Dakin that he or she had seen the defendant leave the premises with approximately two ounces of cocaine, individually packaged for sale.

Dakin sought a search warrant for the second-floor apartment. The application described the premises as a three-story building with two exterior doors. One door led to a first-floor apartment and the other, Dakin believed, to a second-floor apartment.

The search warrant issued on June 21, 2010. Dakin chose not to execute the warrant immediately. Instead, he periodically traveled by the premises in the hope of spotting the defendant outside.

On June 24, 2010, Dakin, accompanied by Detective Donald LeClair, drove by the premises and observed the defendant exit the front door and proceed to his truck parked in the driveway. LeClair pulled his unmarked police vehicle behind the defendant's truck, blocking it in. Dakin exited the vehicle and approached the defendant, who was looking into the bed of the truck. Recognizing the defendant from a registry of motor vehicles' image, Dakin told him that he had a warrant to search his apartment and asked the defendant to accompany him inside.

The defendant led the officers to the front porch of the premises. On the porch, LeClair attempted to radio extra personnel to assist in the execution of the warrant. While LeClair was momentarily distracted, the defendant made a run for it. He did not get far. Running off the porch, he was tackled by Dakin on the sidewalk. A significant struggle ensued during which the defendant repeatedly yelled, "Paul, Paul." Eventually the defendant was subdued, handcuffed, and arrested for assault and battery on a police officer. Uniformed police officers arrived shortly thereafter.

LeClair entered the premises and proceeded to the second-floor apartment. A woman answered his knock on the door. LeClair asked the woman if Jason lived there. She responded that he lived upstairs. LeClair noticed a stairway leading to a third-floor apartment. The stairs to the third-floor apartment were not

visible from the front porch. LeClair left the premises and met with Dakin.

LeClair informed Dakin that the defendant lived on the third floor and that the search warrant was for the wrong apartment. On Dakin's direction, LeClair and an unidentified uniformed officer proceeded to the third-floor apartment. LeClair knocked on the door. It was answered by the defendant's roommate, Paul Cincone. Cincone, along with a female friend, Becky Gaumond, were in the apartment drinking beer and watching television. LeClair told Cincone that he had a warrant to search the apartment for narcotics. Cincone asked to see it. Knowing that the warrant was for the wrong apartment, LeClair did not show it to him. Instead, LeClair made a cursory check of the apartment for other occupants and then directed Cincone and Gaumond to accompany him outside. The unidentified uniformed officer remained in the apartment. Outside, LeClair and Dakin spoke with Cincone, who disavowed any knowledge of the defendant's cocaine-related activities but acknowledged that the defendant was growing marijuana in the apartment. Cincone, LeClair, and Dakin then returned upstairs to the apartment.[4] Cincone entered the kitchen and observed the uniformed officer standing in the doorway to the defendant's bedroom. Cincone was told to sit at the kitchen table, and he complied. From his vantage point, Cincone was able to see the uniformed officer enter the defendant's bedroom and to hear the officer rummaging through papers. He also heard the officer exclaim, "I think I found something."[5]

Dakin originally considered asking Cincone to sign a "Consent to Search" form but ultimately decided to obtain a search warrant for the third-floor apartment. To that end, he returned to the police station to redraft an affidavit in support of the application for a new search warrant. This second affidavit contained the identical information presented in the first affidavit but was supplemented by a recitation of the day's events, which included the confrontation and struggle with the defendant as well as the information supplied by Cincone. A new search warrant was issued authorizing a search of the third-floor apartment for "[c]ocaine, marijuana, paraphernalia and other material utilized

---

[4]Gaumond, at her request, was allowed to leave.

[5]Just what the officer may or may not have found was not identified.

in the use, processing and sale of cocaine." Dakin returned to the apartment, and with the assistance of other officers executed the warrant, which resulted in the discovery of the contraband.

*Discussion.* When challenging a search conducted pursuant to a warrant, the defendant has the burden of showing that evidence was obtained illegally. *Commonwealth* v. *Taylor*, 383 Mass. 272, 280 (1981). The Massachusetts statute governing the content of search warrant affidavits requires suppression of evidence seized pursuant to a warrant not based on probable cause. See *Commonwealth* v. *Upton*, 394 Mass. 363, 366-367 (1985), citing G. L. c. 276, § 2B.[6] "Under the *Aguilar-Spinelli* standard, if an affidavit is based on information from an unknown informant, the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable' (the veracity test)." *Id.* at 374-375 (quotations and citations omitted). "[O]ur inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995).

*Probable cause.* The defendant argues that the affidavit supporting the second search warrant did not provide probable cause to believe that evidence of contraband would be found in the third-floor apartment because the informant's statements were stale, uncorroborated, and demonstrably false, and because tainted fruits of a prior illegal search were used to bolster the informant's information.

Specifically, the defendant argues that because the affidavit in support of the search warrant refers to information learned from a conversation that occurred up to 120 days prior to issuance of the warrant, the search warrant was based on stale information.

---

[6]The Massachusetts Declaration of Rights provides more substantive protection to criminal defendants than does the Fourth Amendment to the United States Constitution in the determination of probable cause. *Commonwealth* v. *Upton, supra* at 373-374, citing *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969).

The affidavit contained the informant's statements made on June 14, 2010, seven days before the issuance of the warrant, that the defendant was continuing to sell cocaine and pills from the premises. The affidavit contained information that the informant had seen the defendant leave the premises within the previous three days with a bag containing individually packaged bags of cocaine. While affidavits in support of a search warrant must be closely related to the time of issuance of a warrant, time is of less significance where, as here, the defendant is engaged in an ongoing drug distribution business. See *Commonwealth* v. *Colon*, 80 Mass. App. Ct. 162, 170 (2011). We conclude that the information was not stale.

The defendant also argues that the discovery of the third-floor apartment by police undermined the informant's veracity and basis of knowledge as set forth in the affidavit. We disagree. In neither the first or second affidavit did Dakin state that the informant had been inside the defendant's apartment. It was a third party, not the informant, whom the informant observed entering the premises. Dakin's second affidavit contained the informant's observations that the defendant accessed his apartment through the same exterior entrance that a second-floor occupant would have used. Dakin's observation of the defendant leaving the building corroborated the informant's basis of knowledge, and the subsequent revelation that the defendant used an additional staircase once inside the premises compromises neither the informant's basis of knowledge nor veracity.[7] We agree with the motion judge's conclusion that the search warrant affidavit established a nexus between the defendant's drug-selling activity and his residence sufficient to establish probable cause to search the apartment. See *Commonwealth* v. *Gallagher*, 68 Mass. App. Ct. 56, 59-60 (2007). Cf. *Commonwealth* v. *Medina*, 453 Mass. 1011 (2009) (no probable cause to search apartment where no facts connected drug sales to residence).

Even if the information obtained by the police officers during

[7]The defendant conceded the informant's veracity as a past reliable informant during the motion hearing. Defense counsel stated, "I think the application satisfied the reliability factor with respect to [the informant]. It's really the demonstration of a source of knowledge and the actual information that [the informant] imparts."

the execution of the first warrant should not have been included in the affidavit in support of the second warrant, the statements included in the second affidavit made by the defendant's roommate, which confirmed that the defendant lived on the third floor and grew marijuana, were not necessary to a determination of probable cause. There was sufficient probable cause based on the reliable informant, whose basis of knowledge was corroborated by police observations. In other words, that additional information provided in the affidavit supporting the second search warrant neither established nor detracted from the probable cause evident in the affidavit supporting the first search warrant.

The fact that the informant stated that he or she observed the defendant enter what appeared to be the door to the second-floor apartment was not fatal to the basis of knowledge prong of the *Aguilar-Spinelli* test because police observed the defendant leave the premises using this door and discovered that the defendant's third-floor apartment was in fact accessible using this doorway.

*Police misconduct.* The defendant argued, and the motion judge agreed, that the initial entry and search by police was unconstitutional. The defendant argues on appeal that the police misconduct was sufficient to warrant suppression as a deterrent, citing *Commonwealth* v. *Butler*, 423 Mass. 517, 525 (1996), and *Commonwealth* v. *Lewin*, 405 Mass. 566, 586 (1989). This argument is unavailing. In *Butler, supra* at 525-526, the Supreme Judicial Court concluded that any delay in the presentment of the defendant for arraignment was not so unreasonable as to require suppression of the defendant's statements. The court stated, however, that in other instances, it may be that "if the police have engaged in misconduct . . . that would justify suppression as a deterrent against similar future conduct." *Id.* at 525. In *Lewin*, the Supreme Judicial Court vacated a Superior Court judge's order dismissing charges against a defendant where the judge had concluded that dismissal was warranted because of egregious police misconduct in offering false information attributed to an informant. The court concluded that suppression of evidence might be warranted, but dismissal of the

charges was not the proper remedy.[8] *Commonwealth* v. *Lewin,* *supra* at 586.

In the present case, police officers initially entered the third-floor apartment of 212-214 Hampden Street, Chicopee, knowing that the first search warrant was issued for the second-floor apartment. Even if exigent circumstances gave rise to the officers' initial warrantless entry to secure the third-floor apartment after the defendant attempted to alert Cincone of the police presence, the exigency dissipated once the known occupants were removed from the apartment and a cursory search revealed no other occupants. We agree with the motion judge, who concluded that instead of securing the third-floor apartment from the outside, the police reentered the apartment with Cincone and conducted an illegal search of the premises. "[P]olice officers who secure a dwelling while a warrant is being sought . . . *may not enter* that dwelling, in the absence of specific information supporting an objectively reasonable belief that evidence will indeed by removed or destroyed unless preventative measures are taken." *Commonwealth* v. *Webster,* 75 Mass. App. Ct. 247, 253 (2009), quoting from *Commonwealth* v. *DeJesus,* 439 Mass. 616, 621 (2003). The warrantless entry and search by police provided no information necessary to the determination of probable cause. "Evidence obtained during a search pursuant to a warrant that was issued after an earlier illegal entry and search is admissible as long as the affidavit in support of the application for a search warrant contains information sufficient to establish probable cause to search the premises 'apart from' observations made during the initial illegal entry and search." *Commonwealth* v. *Tyree,* 455 Mass. 676 692 (2010), quoting from *Commonwealth* v. *DeJesus, supra* at 625. The second search warrant was valid and not improperly bolstered by exploitation of the prior illegality.

*Franks hearing.* The defendant argues that he was entitled to a hearing pursuant to *Franks* v. *Delaware,* 438 U.S. 154 (1978). "[W]here a defendant makes a preliminary substantial showing that an affidavit contains intentionally false statements, or state-

---

[8]In concluding that the police misconduct in *Lewin, supra* at 585, did not warrant dismissal of the serious charges, including murder, the court stated that the "misconduct deserves direct censure, condemnation, and punishment."

ments made with reckless disregard for the truth, which were necessary to the determination of probable cause, he is entitled to a full hearing on the issue." *Commonwealth* v. *Valdez*, 402 Mass. 65, 67 (1988). "In *Commonwealth* v. *Amral*, 407 Mass. 511, 522, 525 (1990), the Supreme Judicial Court held that a defendant, under a less stringent test than *Franks*, may be entitled to an in camera hearing to determine whether he or she must receive a *Franks* hearing." *Commonwealth* v. *DeMatos*, 77 Mass. App. Ct. 727, 733 (2010).

Here, a judge other than the motion judge conducted an *Amral* hearing and was within his discretion in finding that the defendant had not substantially shown that the affidavit in support of the warrant contained intentionally false statements or statements made with reckless disregard for the truth. Under the circumstances, the discovery by police that the defendant lived in the third-floor apartment did not establish that the affidavit contained intentionally false statements or statements made with reckless disregard for the truth.

The order denying the defendant's motion to suppress and the order denying the defendant's request for a *Franks* hearing are affirmed.

*So ordered.*