APPEALS COURT 
 
 COMMONWEALTH vs. BARRY A. HANSON, JR.

 
 Docket:
 24-P-870
 
 
 Dates:
 April 10, 2025 – December 2, 2025
 
 
 Present:
 Hand, Grant, & Wood, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Firearms. Practice, Criminal, Motion to suppress, Warrant. Probable Cause. Constitutional Law, Search and seizure, Probable cause. Search and Seizure, Probable cause, Warrant.
 
 

       Indictments found and returned in the
Superior Court Department on October 31, 2023. 
      A pretrial motion to suppress evidence was
heard by William J. Ritter, J., and a motion for reconsideration was considered
by him.
      An application for leave to prosecute an
interlocutory appeal was allowed by Gabrielle R. Wolohojian, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was reported by her to
the Appeals Court.
      Anne S. Kennedy, Assistant District
Attorney, for the Commonwealth.
      Charles P. McGinty for the defendant.
      WOOD, J. 
This is the Commonwealth's interlocutory appeal from the order of a
Superior Court judge allowing the defendant's motion to suppress evidence, and
the subsequent denial of the Commonwealth's motion for reconsideration.  We must decide whether the police violated
the particularity requirement of the Fourth Amendment to the United States
Constitution and art. 14 of the Massachusetts Declaration of Rights when,
having learned during the execution of a search warrant for the defendant's
first-floor apartment that he also rented the second-floor apartment in the
same two-family home, and that he was using the two apartments as a single
dwelling, they expanded their search to include the second-floor apartment
without obtaining a new warrant. 
Concluding that this case was controlled by Commonwealth v. Hall, 366
Mass. 790, 799-800 (1975), the judge decided that the search of the second
floor exceeded the scope of the search warrant approved by the clerk-magistrate
and therefore allowed the motion to suppress. 
We agree that this case is controlled by Hall.  Accordingly, we affirm the order allowing the
motion to suppress as well as the denial of the Commonwealth's motion to
reconsider that allowance.
      Background.  The judge held an evidentiary hearing at
which a single witness, Lieutenant Carlos Dingui of the Southbridge police
department, testified.  The judge
"heard and credited [Dingui's] testimony"; we summarize it here,
reserving some details for later discussion. 
See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015), quoting
Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015) (appellate court may
supplement motion judge's subsidiary findings with evidence from record that is
uncontroverted where judge explicitly or implicitly credited that evidence,
provided supplemented facts "do not detract from the judge's ultimate
findings").
      In July 2023, a detective with the
Southbridge police department applied for and obtained a warrant authorizing a
search of the defendant's home at "30 Golf Street, 1st-floor apartment in
Southbridge, MA, along with its basement, attic, storage sheds, garages, and
curtilage associated with this residence. . . .  [w]hich is occupied by and/[or] in the
possession of:  [the defendant]."[1]  The building at 30 Golf Street is a
two-family house comprised of two apartments, one on the first floor and the
other on the second floor.  In front of
the house are two mailboxes, one for each apartment.  Each of the apartments is accessible from the
outside through a "front door." 
The front door to the first-floor apartment is on the front of the
house.  The entryway to the second-floor
apartment is on the left side of the house. 
It opens to a staircase which in turn leads to a front door to that
apartment.
      Each apartment also has a back door
accessible from a two-story enclosed porch on the back of the house.[2]  The two porch levels are connected by an
internal stairway.  There are two exterior
doors on the back of the house that provide access from the backyard to the
first level of the porch.  One -- at the
base of the staircase leading to the back door of the second-floor apartment --
was locked when the police searched the house. 
The other -- directly in front of the back door to the first-floor
apartment -- was blocked by a bureau inside the porch.
      The affidavit supporting the search
warrant detailed several sales of marijuana and related paraphernalia to an
undercover police officer, which took place at two locations other than the
defendant's home.  The nexus between the
defendant's home and the illegal activity was established by police
surveillance of the defendant leaving "the front door of his
residence" (i.e., "the first floor of 30 Golf Street") with the
plastic bags and shoe box from which he later retrieved the drugs and
paraphernalia that he sold to the undercover police officer.
      On July 28, 2023, Dingui and other
officers went to the front door of the first-floor apartment.  The defendant's girlfriend answered the door
and they advised her that they had a search warrant.[3]  The police entered the kitchen and saw an
open door leading from the rear of the room to the first floor of the enclosed
back porch.  The girlfriend told the
police that the defendant rented both the first- and second-floor apartments,
treating them as a single unit.  The
girlfriend's children, of whom there were three or four, were in the home, and
the girlfriend told the police that her twelve year old son (boy) was on the
second floor.  The boy then came into the
kitchen from the back porch dressed in a towel, having just taken a shower on
the second floor.  The girlfriend gave
the police permission to accompany the boy upstairs so he could dress.
      To get to the second floor, the police
went through the kitchen on the first floor, out the open door at the back of
the kitchen, and onto a landing on the enclosed porch.[4]  They then took the stairs from the
first-floor landing to the second-floor landing and went through an open door
into the second-floor apartment.
      The layout of the second-floor apartment
was similar to that of the first-floor apartment, although the kitchen in the
second-floor apartment was being used as an office.  The boy's bedroom door opened off of the
kitchen, as did two other doors. Those two doors were closed and padlocked, and
the police saw wired surveillance cameras immediately beside them.[5]
      The police and the boy, who had dressed,
returned to the first floor.  Dingui then
asked the girlfriend how the defendant used the second-floor apartment; she
responded that the defendant had been renting both apartments for "a
couple years,"[6] and that the second-floor apartment was "just an
upstairs to them."  She also said
that the defendant sometimes stayed on the second floor, and that the defendant
and her family "generally [kept] [the] doors [to the enclosed porch area]
open because they . . . [went] up and down throughout the day."  She also told the police that the defendant
was the only person with access to the padlocked rooms on the second
floor.  At that point, the police viewed
the two apartments to be "a single-family home."
      Without applying for another search
warrant for the second floor, the police obtained the keys to the padlocks
securing the two padlocked doors, unlocked them, and searched the rooms into
which they led.  During that search, the
police found contraband, including firearms.[7]
      Ultimately, a grand jury indicted the
defendant for three counts of unlawful possession of a large capacity weapon or
feeding device, in violation of G. L. c. 269, § 10 (m);
four counts of unlawful possession of a firearm, in violation of G. L.
c. 269, § 10 (h), as an armed career criminal, see G. L.
c. 269, § 10G (b); one count of unlawful possession of
ammunition, in violation of G. L. c. 269,
§ 10 (h) (1), as an armed career criminal, see G. L.
c. 269, § 10G (b); one count of forgery of a promissory note, in
violation of G. L. c. 267, § 1; and one count of possession with
the intent to distribute a class D substance, in violation of G. L.
c. 94C, § 32C (a).[8]
      After his arraignment in the Superior
Court, the defendant moved to suppress the evidence found in the second-floor
apartment, arguing that the search violated the particularity requirements of
both the Fourth Amendment and art. 14, as well as G. L. c. 276,
§ 2.[9]  See G. L. c. 276,
§ 2 ("Search warrants shall designate and describe the building,
house, place, vessel or vehicle to be searched and shall particularly describe
the property or articles to be searched for").  In his motion, the defendant likened the
facts of this case to those in Hall, 366 Mass. at 791-792, in which (as we
discuss in more detail, infra) the Supreme Judicial Court rejected the
Commonwealth's argument that a warrant for a second-floor apartment in a
multiunit building extended to a different, vacant apartment in the same
building.  See id. at 799-800.  After a hearing, the judge in the present
case ruled that "[r]egardless of how the defendant used the two
apartments, the second-floor apartment was not 'part and parcel' or a
'contiguous part' of the first-floor apartment," Commonwealth v. Wallace,
67 Mass. App. Ct. 901, 902 (2006); concluded that Hall, supra, controlled the
case; and, ultimately, concluded that the warrant did not authorize the search
of the second-floor apartment.[10]
      A single justice of the Supreme Judicial
Court granted the Commonwealth's motion for leave to pursue in this court an
interlocutory appeal of the judge's ruling. 
After careful consideration, we conclude that, on the facts of this
case, the search of the second-floor apartment violated the applicable
constitutional and statutory particularity requirements, and that the judge
properly granted the defendant's motion to suppress the evidence obtained in
the search of the second floor at 30 Golf Street.
      Discussion.  1. 
Standard of review.  "On
appeal, we review a ruling on a motion to suppress by accepting 'the judge's
subsidiary findings of fact absent clear error but conduct an independent
review of [the] ultimate findings and conclusions of law.'"  Commonwealth v. Cintron, 103 Mass. App. Ct.
799, 801-802 (2024), quoting Commonwealth v. Polanco, 92 Mass. App. Ct. 764,
769 (2018).  "A judge's finding is
clearly erroneous only where there is no evidence to support it or where the
reviewing court is left with the definite and firm conviction that a mistake
has been committed."  Commonwealth
v. Wittey, 492 Mass. 161, 181 (2023), quoting Commonwealth v. Colon, 449 Mass.
207, 215, cert. denied, 552 U.S. 1079 (2007).
      2. 
Particularity requirement.  The
Fourth Amendment to the United States Constitution states:
"The right
of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated, and no
Warrants shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be searched, and the
persons or things to be seized" (emphasis added).
Article 14 of the
Massachusetts Declaration of Rights requires similar particularity.  See Commonwealth v. Walsh, 409 Mass. 642,
644-645 (1991).  The purpose of this
particularity requirement is "to prevent general searches."  Maryland v. Garrison, 480 U.S. 79, 84
(1987).  "[T]he requirement ensures
that the search will be carefully tailored to its justifications, and will not
take on the character of the wide-ranging exploratory searches the Framers
intended to prohibit."  Id.
      This case presents a straightforward
constitutional question:  How does the
Fourth Amendment's particularity clause apply to multiunit residential
buildings?  At least where the police
know, when they apply for a warrant, that the building contains multiple
residential units, the warrant must state the unit(s) to be searched, thereby
(a) limiting the search to the unit(s) described and (b) excluding all other
units in the building from the scope of the warranted search.  See Hall, 366 Mass. at 799-800; Commonwealth
v. Forbes, 85 Mass. App. Ct. 168, 176 (2014). 
Where the police learn, after they have begun executing a warrant
authorizing the search of a single unit in a multiunit building, that there is
reason to extend the search to another unit within the building, this does not
justify extending the scope of the warrant beyond the particular unit
described, absent exigent circumstances (or some other applicable exception to
the search warrant requirement).[11]
      As the judge recognized, Hall articulated
the controlling principle here.  See
Hall, 366 Mass. at 799-800.  In that
case, the Commonwealth obtained a search warrant for the second-floor apartment
of a three-story building with one apartment on each floor.  Id. at 791. 
During the search, police officers learned that the target owned the
building and controlled the third-floor apartment.  Id. 
Further, officers received information that the target stored additional
drugs in the third-floor apartment. 
Id.  Officers then searched the
third-floor apartment and recovered contraband. 
Id. at 791-792.  The Supreme
Judicial Court held that the search of the third floor was unlawful, concluding
that "different apartments in a single building are as distinct as
separate dwelling houses, so that a separate warrant on probable cause is
ordinarily needed for each."  Id. at
800.  The court articulated the principle
behind this holding, stating, "The authority to search is limited to the
place described in the warrant and does not include additional or different
places" (citation omitted).  Id. at
799.
      In a closely analogous situation, we later
held that, where officers obtained a warrant to search one apartment in a
multiunit building and learned, during the execution of the warrant, that the
target actually lived in a different unit, their search of that unit without a
second warrant was unconstitutional. 
Forbes, 85 Mass. App. Ct. at 171, 176.[12]
      As the judge here recognized, this case is
materially indistinguishable from Hall. 
See Hall, 366 Mass. at 791-792. 
The police officers in the instant case obtained and executed a warrant
for a specific apartment in a multiunit building, the "1st-floor
apartment."  During the execution of
the warrant, they learned that the defendant also rented the second-floor
apartment.  Then, without obtaining a
second warrant for that second unit, the police searched it.  For the same reasons the search of the
third-floor apartment in Hall was not covered by the warrant obtained there,
the search of the second-floor apartment here was also not covered by the
warrant and therefore was unconstitutional. 
See id. at 799-800.[13]
      The United States Court of Appeals for the
Second Circuit has focused on the limiting principle in the particularity
clause, stating, "In determining the permissible scope of a search that
has been authorized by a search warrant, . . . we must look to the
place that the magistrate judge who issued the warrant intended to be searched
. . . ."  United
States v. Voustianiouk, 685 F.3d 206, 211 (2d Cir. 2012).  In this case, the clerk-magistrate limited
the search to the "1st-floor apartment," giving clear notice to the
executing officers of the limitation set by the warrant, including the fact
that the second-floor apartment was beyond the scope of the warrant.
      Moreover, the Voustianiouk court
identified the correct course of action where police discover, during the
execution of a warrant in one apartment, that there is reason to search a
different apartment:  the officers
"could have called a magistrate judge and obtained a new warrant to search
the second-floor apartment.  The evidence
wasn't going anywhere, and neither was their suspect."  Voustianiouk, 685 F.3d at 208.  See United States v. Bershchansky, 788 F.3d
102, 113 (2d Cir. 2015) ("A reasonable police officer would have
recognized that the warrant authorized a search only of Apartment 2, he would
not have proceeded to search an unauthorized apartment, and he would have
called the magistrate judge for permission to search Apartment 1").  The same observation applies here, given that
the defendant was in custody at the time police learned he also rented the
second-floor apartment, and the police could have secured both units while they
sought a second warrant.
      Relying on dicta in a footnote to the
opinion in Hall, 366 Mass. at 800 n.11, the dissent argues that the place to be
searched should be construed more liberally here for four reasons, based on the
evidence:  (1) the police applied for and
obtained a search warrant for one apartment in a two-family dwelling; (2) the
police limited the warrant application to the first-floor apartment based on a
mistaken belief that the defendant lived only in that apartment; (3) probable
cause existed to search the second-floor apartment; and (4) when they executed
the warrant, the police learned that the defendant also rented the second-floor
apartment and used both as a "single dwelling."  Post at   
.  None of these facts
distinguishes this case.
      First, in both Hall, 366 Mass. at 791, and
Forbes, 85 Mass. App. Ct. at 170, as in this case, the police applied for a
warrant to search a particular apartment in a multiunit dwelling.
      Second, in both Hall, supra at 791, and
Forbes, supra at 172, as in this case, the police limited the warrant
application to a single apartment based on a mistaken belief that the defendant
resided exclusively in that apartment.
      Third, although the existence of probable
cause is a necessary predicate for the search of a second apartment in a
multiunit building, it is not enough. 
See Garrison, 480 U.S. at 84 (purpose of particularity clause is to limit
authorization to search to specific areas); Voustianiouk, 685 F.3d at 211
("the permissible scope of a search" is limited "to the place
that the magistrate . . . intended to be searched").  Police officers must either obtain a second
warrant, satisfying the particularity clause, see Hall, 366 Mass. at 800, or
establish the existence of exigent circumstances and the impracticality of
obtaining a warrant, see Commonwealth v. Tyree, 455 Mass. 676, 683-684
(2010).  They did neither here.
      Fourth, where police officers know that
there are multiple residential units in the target building, they are obligated
to identify the unit to be searched in the application to exclude other
apartments from the scope of the requested warrant.  See Commonwealth v. Carrasco, 405 Mass. 316,
323-324 (1989).  Cf. Commonwealth v.
Luna, 410 Mass. 131, 134-135 (1991) ("if the police knew or should have
known that, at the time the warrant was issued, there was a completely separate
downstairs apartment, they would have had to demonstrate to the magistrate
probable cause to search each apartment" [emphasis added]).[14]  The mere fact that police learned during the
execution of a warrant that the target was using a different apartment in the
building, which had been excluded from the scope of their authorization to
search, did not permit them to ignore that limitation.  See Hall, 366 Mass. at 799 ("The
authority to search is limited to the place described in the warrant and does
not include additional or different places" [citation omitted]).  They were obligated to get another warrant to
search that second apartment.  See
Bershchansky, 788 F.3d at 113.[15]
      Alternatively, the dissent suggests that
two other cases -- Commonwealth v. Scala, 380 Mass. 500 (1980), and
Commonwealth v. Wallace, 67 Mass. App. Ct. 901 (2006) -- support the search of
the second-floor apartment.  Post at    . 
Both cases are distinguishable.
      In both Scala, 380 Mass. at 501, and
Wallace, 67 Mass. App. Ct. at 901, the police officers obtained a warrant to
search a second-floor apartment.  In each
case, during the search of the apartment, the police officers discovered stairs
leading to a third-floor attic, accessible only through the second-floor
apartment.  See Scala, supra; Wallace,
supra at 901-902.  In each circumstance,
the search of the attic did not exceed the scope of the warrant.  See Scala, supra at 509; Wallace, supra at
901.
      Here, by contrast, the police officers
were aware that there was a second-floor apartment when they applied for the
search warrant.  Unlike the attic spaces
in Scala and Wallace, that second-floor apartment had both its own mailing
address and separate entrance. 
Accordingly, when the search warrant application and the warrant
specified that the search would be limited to the "1st-floor
apartment," they necessarily excluded the second-floor apartment.[16]
      Finally, the Commonwealth argues that the
second-floor apartment was within the curtilage of the first-floor apartment
and therefore was within the scope of the warrant.  We disagree.[17]
      First, after an evidentiary hearing, the
judge found that "the police were acutely aware that the building housed
two separate apartments" and that "[r]egardless of how the defendant
used the two apartments, the second-floor apartment was not 'part and parcel'
or a 'contiguous part' of the first-floor apartment," quoting Wallace, 67
Mass. App. Ct. at 902.  These findings
were well supported by the record and inconsistent with a finding that the
second-floor apartment was within the curtilage of the first-floor apartment.
      Second, in Commonwealth v. McCarthy, 428
Mass. 871, 871-872 (1999), the Supreme Judicial Court held that a visitor's
parking space at an apartment complex was not within the curtilage of a
tenant's apartment and, thus, that a search warrant issued for the apartment
did not encompass that parking space.  In
support of this holding, the court observed that "the area of curtilage
appurtenant to an apartment is very limited."  Id. at 875, citing Hall, 366 Mass. at 794.
      Third, as noted above, the warrant
permitted police to search "30 Golf Street, 1st-floor apartment in
Southbridge, MA, along with its basement, attic, storage sheds, garages, and
curtilage associated with this residence. . . .  [w]hich is occupied by and/[or] in the possession
of:  [the defendant]" (emphasis
added).  The magistrate's limitation of
the warrant to the "1st-floor apartment" and its
"curtilage" necessarily excluded the second-floor apartment from the
first-floor apartment's curtilage.
      For all of these reasons, we think that
the concept of curtilage at issue here is not expansive enough to include
different apartments in a multiapartment building.  This is especially so where a warrant, as in
this case, authorizes police to search a particular apartment, and thereby
excludes other apartments from its scope. 
Indeed, to define "curtilage" in this context as extending to
the second-floor apartment would ignore the reasoning of Hall.  See Hall, 366 Mass. at 800 ("different
apartments in a single building are as distinct as separate dwelling houses, so
that a separate warrant on probable cause is ordinarily needed for each").[18]
      In sum, when police extended their search
to the second-floor apartment without obtaining a second warrant, they
conducted an unconstitutional search. 
Therefore, the judge correctly concluded that the fruits of that search
should be suppressed.
      The order allowing the motion to suppress
is affirmed.  The order denying the
motion to reconsider is affirmed.
So ordered.

      GRANT, J. (concurring).  I concur in the result.  On these facts, applying Commonwealth v.
Hall, 366 Mass. 790, 799-800 (1975), the motion judge could permissibly rule
that police should have obtained another search warrant for the second-floor
apartment.  If the motion judge had ruled
that the description of the premises could be "construed more
liberally," id. at 800 n.11, and denied the motion to suppress, I also
would have voted to uphold that ruling.
      I write separately to say that the primary
author goes too far in interpreting constitutional particularity requirements,
as applied to a search warrant for a multiunit building, to require the warrant
to specify the "unit(s) to be searched" and to "exclud[e] all
other units in the building."  Ante
at    . 
The Fourth Amendment to the United States Constitution requires that a
search warrant "particularly describ[e] the place to be
searched."  Article 14 of the
Massachusetts Declaration of Rights requires that a warrant "to make
search in suspected places" include "a special designation of the
persons or objects of search."  See
also G. L. c. 276, § 2 ("Search warrants shall designate
and describe the building, house, place, vessel or vehicle to be
searched").  Those authorities do
not require specification of a unit number, nor do they require that the
description exclude any part of a building. 
In my view, on these facts, the police could have obtained two search
warrants and executed them simultaneously: 
one for the defendant's person seeking keys to any locks at 30 Golf
Street, and another identifying the place to be searched as any apartment,
room, or locked container at 30 Golf Street to which those keys provided
access.  A description in the latter
search warrant of the premises to be searched as any locked area within 30 Golf
Street to which the defendant's keys provided access would, in my view, have
satisfied constitutional and statutory particularity requirements.
      HAND, J. (dissenting).  In Commonwealth v. Hall, 366 Mass. 790, 800
(1975), the Supreme Judicial Court held that, because "different
apartments in a single building are as distinct as separate dwelling houses,
. . . a separate warrant on probable cause is ordinarily needed for
each [apartment]," as was needed in that case (emphasis added).  In dicta, however, the court was explicit
that its decision "[was] not intended to lay down a rule that the
description in a warrant of the location and area to be searched may never be
construed more liberally than in [Hall]," and provided an example in which
"a liberalized reading of the warrant may be proper," that is, where
"the evidence when the warrant is executed . . . show[s] that
the [defendant's] illegal activities spill over into a directly adjacent or
contiguous area under the same control." 
Id. at 800 n.11.  Although
"spillover" of criminal activity is not an issue here, I think this
case -- where the evidence shows that (1) the police applied for and
obtained a search warrant for one apartment in a two-family dwelling,
(2) the warrant was limited to a single apartment only because of the
warrant applicant's mistaken belief that the defendant lived only in that
apartment, (3) probable cause existed to search the entirety of the
defendant's home, and (4) when the warrant was executed, police learned that
the occupant of the subject apartment also had exclusive control over the other
apartment in the same building, and used both as undifferentiated parts of a
single dwelling -- presents an instance in which a search warrant should be
read with the degree of liberality for which the Hall court left room.  See id. 
Because, on that basis, I would reverse the order allowing the motion to
suppress, I respectfully dissent.
      Here, the police applied for a warrant for
the defendant's home, which they mistakenly believed was limited to the
first-floor apartment of 30 Golf Street. 
It was only after they entered the home that they learned that the two
apartments comprising 30 Golf Street were in fact being used as one home -- a
point made explicit by the defendant's girlfriend, who lived in the home and
permitted the police to go up to the second floor,[1] and underscored by her
son's movement between the two floors of the home as he showered and dressed.[2]  The affidavit supporting the search warrant
application tied the defendant's home to his sale of drugs and drug
paraphernalia to an undercover police officer. 
It did so by describing the defendant leaving 30 Golf Street via the
door on the first floor of the building while carrying the containers from
which he shortly thereafter retrieved the items that he sold to that undercover
officer.[3]  This evidence provided
probable cause to justify a search of the defendant's home.  See, e.g., Commonwealth v. Young, 77 Mass.
App. Ct. 381, 386-387 (2010) (adequate nexus to search defendant's apartment
where police saw defendant leave front entrance of his apartment building after
arranging drug transaction with confidential informant, then walk directly to
point of sale).  Where that probable
cause to search was tied to the defendant's dwelling (which, at the time the
police applied for the search warrant, they believed to be limited to the
first-floor apartment), and not tied specifically to the first floor of the
building, I see no basis on which the probable cause was limited to any
particular location within the home.[4] 
See Commonwealth v. Clagon, 465 Mass. 1004, 1006 (2013) ("A warrant
application need not establish to a certainty that the items to be seized will
be found in the specified location, nor exclude any and all possibility that
the items might be found elsewhere.  The
test is probable cause, not certainty" [quotation and citation omitted]).
      The fact that the defendant exclusively
occupied both apartments at 30 Golf Street, such that he used the entire
building as a single-family home, distinguishes this case from Hall, 366 Mass.
at 791, and the cases cited by my colleagues, Commonwealth v. Forbes, 85 Mass.
App. Ct. 168 (2014); United States v. Bershchansky, 788 F.3d 102 (2d Cir.
2015); and United States v. Voustianiouk, 685 F.3d 206 (2d Cir. 2012).  See ante at   
.  In Hall, the defendant owned
the entire three-family building but lived in only the target apartment; the
third-floor apartment that the police searched without obtaining a new warrant
was "unoccupied."  Hall, 366
Mass. at 791.  Moreover, in Hall (unlike
in this case), it appears that the claimed basis for the warrantless search was
new information about the presence of contraband in the unoccupied apartment,
different from the information in the affidavit supporting the warrant that
authorized the search of the apartment in which the defendant lived.[5]  See id.
      In Forbes, 85 Mass. App. Ct. at 171-172,
and Bershchansky, 788 F.3d at 107, the warrantless searches at issue were the
results of mistakes in identifying which apartment in a given multiunit
building the defendant actually occupied; in neither case did the warrant the
police had authorize a search of the place where the target of the warrant
actually lived.  Additionally, in
Voustianiouk, the court declined to address "whether a warrant that
authorizes the search of a particular person's apartment, but mistakenly lists
an incorrect apartment number, would satisfy the particularity requirement of
the Fourth Amendment [to the United States Constitution]," but concluded
that a search warrant for the first-floor apartment where the target did not
live did not authorize the search of the target's second-floor apartment, where
the warrant did not mention the target's name. 
Voustianiouk, 685 F.3d at 211-212. 
These cases did focus on the particularity clause, see ante at     , but they did so in ways inapplicable to
the case at hand.  Importantly, here,
nothing in the record suggests that the search of the second floor implicated
the privacy interests of anyone other than the occupants of the premises
identified in the search warrant.  See
United States v. Vaughan, 875 F. Supp. 36, 43-44 (D. Mass. 1994) (search
warrant for "multiunit structure at 37 Waverly Street occupied by and/or
in the possession of [person A]" permitted search of "the area
occupied by and/or in the possession of [person A]," despite warrant's
failure to specify unit number, but would not permit search of person A's
relative's separate apartment in same building).
      Moreover, apart from my reliance on the
dicta in Hall, 366 Mass. at 800 n.11, the defendant's treatment of the first-
and second-floor apartments as a single unit invites a use-based analysis, like
that our courts have applied in cases such as Commonwealth v. Scala, 380 Mass.
500, 509 (1980); Commonwealth v. Wallace, 67 Mass. App. Ct. 901, 902-903
(2006); and United States v. Evans, 320 F.2d 482, 483 (6th Cir. 1963) (a case
also cited in Hall), to extend the scope of the warrant here to include the
second-floor apartment.
      In Scala, the police obtained a search
warrant for "the entire apartment located on the second floor" of 340
Broadway, Malden.  Scala, 380 Mass. at
501.  During the search of the
second-floor apartment, the police "discovered stairs leading to an
attic"; those stairs were the only way to access the attic.  Id. 
The court acknowledged that "the Fourth Amendment requires
particularity in warrants, which 'are to be read without poetic license,'"
id. at 508, quoting Hall, 366 Mass. at 799, but noted that "the proscription
of poetic license is not also a proscription of common sense," Scala,
supra.  Where the evidence
"reasonably indicate[d] that the third floor attic was part and parcel of
the second floor apartment," the warrant for the entire second floor also
authorized the search of the attic on the third floor.  Id. at 509.
      In Wallace, the police obtained a warrant
to search the apartment "occup[ying] the entire second floor" of a
two-and-a-half story, two-family home at 801 Worthington Street, Springfield.  Wallace, 67 Mass. App. Ct. at 901.  The police also searched "the padlocked,
unfinished attic area located one-half floor above the apartment."  Id. 
The attic was "immediately adjacent to the second-floor apartment
rear door, which was ajar when the police executed the search," and the
evidence "indicate[d] that . . . neither the public nor other
tenants [had] access to the . . . padlocked attic space."  (Quotation omitted.)  Id. at 901-902.  Concluding that "the attic [was]
functionally part of the second-floor apartment," and citing to Scala, 380
Mass. at 508-509, this court held that the search did not exceed the scope of
the warrant.  Wallace, supra at 901.
      Finally, in Evans, 320 F.2d at 483, as the
Hall court summarized,
"a search
under a warrant for 1000 Baldwin Street revealed that a common wall between its
attic and the attic of the adjacent building 1004 had been broken through, the
connection of the 1004 attic with the lower floors of that building sealed, and
the two attic areas used as one."
Hall, 366 Mass.
at 800 n.11.  In Evans, the United States
Court of Appeals for the Sixth Circuit ruled that the trial judge correctly
concluded that the attic of 1004 "was a part of the premises described as
1000 Baldwin," and affirmed the judge's ruling that the warrant for 1000
covered the attic of 1004.  Evans, supra.
      Because the evidence in the instant case
established that the first- and second-floor apartments were, for all practical
purposes, a single home and in no sense separate apartments, I conclude that
the second-floor apartment was "part and parcel" of the same dwelling
identified in the search warrant as "30 Golf Street, 1st-floor
apartment."  See Scala, 380 Mass. at
509; Commonwealth v. Pallotta, 36 Mass. App. Ct. 669, 671 (1994) (search of two
rooms on second floor was proper, notwithstanding fact that police had warrant
for only first-floor apartment, where "[second-floor] rooms were integral
to, [and] in a practical view part of, the first-floor apartment").  Cf. Commonwealth v. Luna, 410 Mass. 131,
134-135 (1991) ("if the police knew or should have known that, at the time
the warrant was issued, there was a completely separate downstairs apartment,
they would have had to demonstrate to the magistrate probable cause to search
each apartment" [emphasis added]).
      To be clear, I do not endorse the police
action in this case as a best practice -- at the time the police learned that
the defendant occupied the entirety of 30 Golf Street, they had probable cause
to apply for a separate search warrant and, had they done so, this appeal would
likely have been unnecessary.  See ante
at    . 
Nonetheless, I do not think that in the circumstances here, the search
violated the particularity requirements of the Fourth Amendment to the United
States Constitution or art. 14 of the Massachusetts Declaration of Rights.  Notwithstanding the presence of two mailboxes
in front of the building, the second-floor apartment at 30 Golf Street was part
of the dwelling for which the police had a search warrant, see Scala, 380 Mass.
at 509, and was "integral to, [and] . . . part of, the
first-floor apartment," Pallotta, 36 Mass. App. Ct. at 671.[6]  Because, on this record and on these
particular facts, I believe that the search the police conducted of the
second-floor apartment was within constitutional bounds, I respectfully
dissent.

footnotes

[1] The
application for the search warrant stated that "[t]he target apartment is
on the first floor."  The
typewritten supporting affidavit identified the defendant's residence as
"30 Golf Street," with a handwritten notation, initialed by the
affiant and the clerk-magistrate, specifying, "1st Floor apartment."

[2] The back
doors to each apartment could be locked, but both were standing open when the police
saw them.

[3] The apartment
door opened into a living room, and a primary bedroom was to the right.  Through the living room was a kitchen; from
the kitchen, there were two bedrooms and a bathroom.

[4] The enclosed porch
area was cluttered with shelves, furniture, and other personal items that
blocked much of the hallway and one of the exterior doors that led from the
first floor of the porch to the backyard.

[5] Dingui
testified that there were cameras "throughout both apartments."

[6] The police
later confirmed that the defendant had a written lease for the entire building
at 30 Golf Street.

[7] It appears
that, on the first floor, the police found evidence of the sale of illegal
drugs.

[8] The defendant
was also indicted for one count of witness intimidation, in violation of
G. L. c. 268, § 13B.

[9] The defendant
also argued that the Commonwealth could not show the existence of exigent
circumstances relieving the police of the usual warrant requirements.  See Commonwealth v. Arias, 481 Mass. 604,
615-617 (2019).  On appeal, the
Commonwealth does not make an exigency argument in connection with the search
of the second-floor apartment, and we therefore need not and do not address
that issue.

[10] The judge
did not address the Commonwealth's alternative argument that the second-floor
apartment came within the curtilage of the first-floor apartment.

[11] The Supreme
Judicial Court has identified one narrow circumstance in which the area
searched may be "construed more liberally" –- when execution of the
warrant reveals "illegal activities spill over into a directly adjacent or
contiguous area under the same control." 
Hall, 366 Mass. at 800 n.11. 
Because the Commonwealth does not argue that this exception applies, we
do not consider it.

[12] The United
States Court of Appeals for the Second Circuit has echoed this application of
the particularity clause.  See United
States v. Bershchansky, 788 F.3d 102, 111 (2d Cir. 2015) (invalidating search
under particularity clause because "when the agents searched Apartment 1
rather than Apartment 2, they searched an apartment that the magistrate judge
did not authorize them to search"); United States v. Voustianiouk, 685
F.3d 206, 215 (2d Cir. 2012) ("there can be no doubt that a search warrant
for one apartment in a building does not permit the police to enter apartments
other than the one specified in their warrant").

[13] The dissent
contends that Hall, 366 Mass. at 791, is distinguishable because "the
claimed basis for the warrantless search [of the third-floor apartment in Hall]
was new information."  Post at    .  In
fact, in this case, as in Hall, supra, the claimed basis for the warrantless
search of the second-floor apartment was also new information -- the
girlfriend's statement that the defendant rented the second-floor apartment.

[14] The dissent
cites Luna, 410 Mass. at 134-135, in support of its argument.  Post at   
.  However, Luna illustrates that
when police officers are aware, before they seek a search warrant, that the
target dwelling contains multiple apartments, they must make a separate showing
to justify the search of each apartment. 
See id.

[15] The dissent
contends that Forbes, Bershchansky, and Voustianiouk -- but not Hall -- are
"inapplicable" because the search of the second-floor apartment here
did not implicate "the privacy interests of anyone other than the
occupants of the premises identified in the search warrant."  Post at   
.  The shortest response to that
contention is that in Hall, the third-floor apartment was
"unoccupied" when officers searched it.  Hall, 366 Mass. at 791.  Despite this, the Supreme Judicial Court held
that the warrantless search of that apartment violated the particularity
clause.  Id. at 799-800.

[16] The dissent
also cites United States v. Evans, 320 F.2d 482, 483 (6th Cir. 1963), in support
of reversal.  In Hall, the Supreme
Judicial Court cited Evans, supra, as an example of a situation where
"illegal activities spill over into a directly adjacent or contiguous
area."  Hall, 366 Mass. at 800
n.11.  Putting aside the different facts
in Evans, supra at 483 & n.2, we all agree that this case does not present
an instance of "illegal activities spill[ing] over."  Hall, supra. 
Post at    .

[17] We note that
while the Commonwealth raised this issue in the trial court, the judge did not
explicitly address it.

[18] Accordingly,
it is unsurprising that there is no Massachusetts precedent supporting the
notion that a second apartment in a multiapartment building might be considered
curtilage of the apartment police are authorized to search by warrant.  Rather, this concept of curtilage has been
applied exclusively to areas other than apartments.  See, e.g., Commonwealth v. Sanchez, 89 Mass.
App. Ct. 249, 251-252 (2016) (shed in backyard of multiunit building); Commonwealth
v. Pierre, 71 Mass. App. Ct. 58, 61-63 (2008) (basement and storage locker in
basement of multiapartment building).

footnotes for dissenting

[1] At the
suppression hearing, the Commonwealth made clear that it was not arguing that
the girlfriend had the authority to consent to the police search of the locked
rooms to which only the defendant had access.

[2] To the extent
the judge found "that the second-floor apartment door was 'open' at the
time of the search [only because] [i]t was July, the back porch landings are
enclosed, and a twelve year old boy recently showered in the second-floor
apartment before walking down to the first-floor apartment," I agree with
the Commonwealth that the finding was clearly erroneous, and I do not consider it.  See Commonwealth v. Wittey, 492 Mass. 161,
181 (2023) (defining clear error); Commonwealth v. Castillo, 89 Mass. App. Ct.
779, 781 (2016), quoting Commonwealth v. Wedderburn, 36 Mass. App. Ct. 558,
558-559 (1994) ("We take the facts from the judge's findings following a
hearing on the motion to suppress, adding those that are not in dispute, and
eliminating those that, from our reading of the transcript, are clearly
erroneous").  Lieutenant Carlos
Dingui of the Southbridge police department testified that the defendant's
girlfriend, who lived with her children and the defendant in the apartment,
said that the defendant and the rest of the family used both the first-floor
apartment and the second-floor apartment "as one residence," and
"generally ke[pt] [the] doors [of both apartments to the enclosed porch
and stairway] open because they . . . go up and down throughout the
day."  None of the other evidence at
the hearing called that testimony into question.

[3] The defendant
does not challenge the existence of probable cause to search the second-floor
apartment.  At the motion hearing,
defense counsel seems to have conceded both the existence of probable cause to
search the second-floor apartment and the fact that it stemmed from the same evidence
that established probable cause to search the first-floor apartment, stating,      
"I certainly
would not argue with the fact that [the police] had probable cause to seek a
. . . warrant to search that second floor based on . . .
the information they've gathered . . . as preparation [for] the
affidavit for the first floor.  But they
did not seek that search warrant."

[4] To the extent
the defendant relies on Keiningham v. United States, 287 F.2d 126 (D.C. Cir.
1960), a case cited with approval by the Supreme Judicial Court in Hall, 366
Mass. at 799, for the proposition that a defendant's use of two apartments
"as a single unit" does not authorize the police to search both
addresses comprising that "unit" based on a warrant for one address,
that case is factually distinguishable from this one.  In Keiningham, police investigating an
illegal gambling operation obtained a warrant for a row house at 1106
Eighteenth Street, N.W. (1106), but, during its execution, they discovered that
a makeshift door had been cut through a partition between 1106 and the
second-floor rear porch of the adjoining row house (1108).  Keiningham, supra at 128.  The police passed through the cutout and,
from the porch of 1108, looked into a window of 1108 where they identified the
defendants "busily conducting a numbers operation."  Id. at 128-129.  Construing the warrant in question
"strictly," the Court of Appeals for the District of Columbia Circuit
concluded that "[t]he authority to search is limited to the place
described in the warrant and does not include additional or different
places," and that, as a consequence, the fact that the defendants used the
1106 and 1108 row houses "as a single unit" did not excuse the police
from their obligation to obtain a warrant for each row house they wished to
search.  Id.  This outcome is not required under Hall given
the Supreme Judicial Court's dicta, see Hall, 366 Mass. at 800 n.11, nor is it
required on the facts of this case.  The
use of one row house to provide access to another for the purposes of hiding a
gambling operation is not, in my view, comparable to the use of two apartments
to create a single home, and the "strictness" with which the warrants
should be read in these contexts is correspondingly different.

[5] Specifically,
in Hall, the search of the target apartment was premised on "a tip,
surveillance of premises, and overheard conversations" described in the
search warrant affidavit; the basis of the warrantless search of the third-floor
apartment was information the police received during the search of the
defendant's apartment when "[o]ne of the officers was called to the street
and received information that there was a larger quantity of drugs in the
third-floor apartment."  Hall, 366
Mass. at 791.

[6] Given my
conclusion, it is unnecessary for me to decide whether the second-floor
apartment was also within the curtilage of the first-floor apartment, and I do
not reach that question.